# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: __March 19, 2015_____

**NOS. 32,605 & 32,606 (Consolidated)**

**FERNANDO GALLEGOS,**

> Plaintiff-Appellant,

v.

**ELDO FREZZA, M.D.,**

> Defendant-Appellee,

and

**PRESBYTERIAN HEALTH PLAN, INC.,**
**A New Mexico Domestic For-Profit Corporation,**

> Defendant.

Consolidated With

**NELLIE GONZALES,**

> Plaintiff-Appellant,

v.

**ELDO FREZZA, M.D.,**

> Defendant-Appellee,

and

**PRESBYTERIAN HEALTH PLAN, INC.,**
**A New Mexico Domestic For-Profit Corporation,**

Defendant.


**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Sarah M. Singleton, District Judge**

Jones, Snead, Wertheim & Clifford, P.A.
Jerry Todd Wertheim
Roxie P. Rawls-De Santiago
Samuel C. Wolf
Elizabeth C. Clifford
Santa Fe, NM

for Appellants

Hinkle, Hensley, Shanor & Martin, LLP
William P. Slattery
Dana S. Hardy
Zachary T. Taylor
Santa Fe, NM

for Appellee

Brown & Gay, P.C.
Remo E. Gay
Melissa A. Brown
Albuquerque, NM

for Defendant Presbyterian Health Plan, Inc.

**OPINION**

**BUSTAMANTE, Judge.**

{1}     Plaintiffs Nellie Gonzales and Fernando Gallegos appeal the district court's dismissal of their medical malpractice suit against Dr. Eldo Frezza, a Texas resident, for lack of personal jurisdiction.  On appeal, we examine whether Dr. Frezza has sufficient contacts with the State of New Mexico to permit the state courts to assert either general or specific personal jurisdiction over him.  We conclude that most of the asserted contacts with this state are insufficient to establish general jurisdiction. We remand for further proceedings, however, because the record on appeal is insufficient to address whether personal jurisdiction exists based on an arrangement between New Mexico Presbyterian Health Plan and Texas Tech Physicians Associates through which Dr. Frezza was referred New Mexico residents for care.

**I.     BACKGROUND**

{2}     After undergoing bariatric surgery, New Mexico residents Nellie Gonzales and Fernando Gallegos (collectively, Plaintiffs) sued Dr. Eldo Frezza for medical malpractice and Presbyterian Health Plan (Presbyterian) for breach of contract and negligent referral.  Both surgeries took place in Lubbock, Texas at the Texas Tech University Health Sciences Center (the Center).  Dr. Frezza was an employee of the Center, which is a governmental unit of the State of Texas.  *See Tex. Tech Univ.*

*Health Scis. Ctr. v. Ward*, 280 S.W.3d 345, 348 (Tex. App. 2008) (stating that the Center is a governmental unit).

{3}     Both Plaintiffs were employees of the State of New Mexico and covered by Presbyterian. When they sought insurance coverage for the bariatric procedure, they were directed to Dr. Frezza by Presbyterian. No other bariatric surgeons were in the Presbyterian network at that time.

{4}     Dr. Frezza moved for dismissal based on the lack of personal jurisdiction and Plaintiffs' failure to state a claim. *See* Rule 1-012(B)(2), (6) NMRA. After a hearing at which it considered documentary evidence, the district court found that it did not have personal jurisdiction over Dr. Frezza and dismissed the complaint. The district court did not rule on Dr. Frezza's other motion. Plaintiffs appealed. Plaintiffs also filed a motion for reconsideration in the district court under Rule 1-060(B)(6) NMRA. Such motion "does not affect the finality of a judgment or suspend its operation." *Id.* As of the time that briefs were submitted, the district court had not ruled on the motion for reconsideration. Additional facts are provided as pertinent to our discussion.

{5}     We note that these cases are two of three presently before the Court of Appeals that are based on a similar set of facts. *See Montaño v. Frezza,* COA No. 32,403. In *Montaño*, filed concurrently, we hold that the Second Judicial District Court did not

err in concluding that application of Texas law would violate New Mexico public policy and denying Dr. Frezza's motion to dismiss for failure to state a claim.

## II. DISCUSSION

### A. The Law of Personal Jurisdiction

{6} The question before us on appeal is whether the district court properly concluded that it could not fairly exert jurisdiction over Dr. Frezza because he did not have sufficient contacts with New Mexico. *See Zavala v. El Paso Cnty. Hosp. Dist.*, 2007-NMCA-149, ¶ 10, 143 N.M. 36, 172 P.3d 173 ("[F]or purposes of personal jurisdiction, we . . . focus on . . . whether [the defendants] had the requisite minimum contacts with New Mexico to satisfy due process."). "[T]he minimum contacts required for the state to assert personal jurisdiction over a defendant depends on whether the jurisdiction asserted is general (all-purpose) or specific (case-linked)." *Sproul v. Rob & Charlies, Inc.*, 2013-NMCA-072, ¶ 9, 304 P.3d 18. More specifically, "[a] state exercises general jurisdiction over a nonresident defendant when its affiliations with the state are so continuous and systematic as to render it essentially at home in the forum state." *Id.* ¶ 12 (alterations, internal quotation marks, and citation omitted). Specific jurisdiction may apply "if [a] defendant's contacts do not rise to the level of general jurisdiction, but the defendant nevertheless purposefully established contact with New Mexico." *Id.* ¶ 16 (internal quotation

marks and citation omitted). "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (internal quotation marks and citation omitted). In analyzing a defendant's contacts with New Mexico, our focus is on the "defendant's activities which . . . provide the basis for personal jurisdiction, not the acts of other defendants or third parties." *Visarraga v. Gates Rubber Co.*, 1986-NMCA-021, ¶ 18, 104 N.M. 143, 717 P.2d 596.

{7}    "Once it has been decided that a defendant purposefully established minimum contacts within the forum [s]tate, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (internal quotation marks and citation omitted). Thus, as part of the overall analysis of whether exercise of jurisdiction would comport with constitutional due process, we may consider "the burden on the defendant, the forum [s]tate's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several [s]tates in furthering

fundamental substantive social policies." *Id.* (internal quotation marks and citation omitted).

**B.      Standard of Review**

{8}      Here, the district court concluded that it had neither general nor specific jurisdiction over Dr. Frezza.  We review this conclusion de novo.  *Cronin v. Sierra Med. Ctr.*, 2000-NMCA-082, ¶ 10, 129 N.M. 521, 10 P.3d 845.  Our approach to review was stated succinctly in *Cronin:*

> If[] . . . a district court bases its ruling upon the parties' pleadings and affidavits, the applicable standard of review largely mirrors the standard that governs appeals from the award or denial of summary judgment.  In this respect, both a district court and this appellate court must construe the pleadings and affidavits in the light most favorable to the complainant.  The complainant need only make a prima facie showing that personal jurisdiction exists when a district court does not hold an evidentiary hearing.

*Id.* (citations omitted).

{9}      Although only a prima facie showing is required, "[w]hen a party contests the existence of personal jurisdiction under Rule 1-012(B)(2) and accompanies its motion with affidavits or depositions, . . . the party resisting such motion may not stand on its pleadings and must come forward with affidavits or other proper evidence detailing specific facts" supporting jurisdiction.  *Doe v. Roman Catholic Diocese of Boise, Inc.*, 1996-NMCA-057, ¶ 10, 121 N.M. 738, 918 P.2d 17; *see State ex rel. Anaya v. Columbia Research Corp.*, 1978-NMSC-073, ¶ 8, 92 N.M. 104, 583 P.2d

5

468 (holding that the state failed to establish personal jurisdiction over the defendant when it did not proffer proof of the jurisdictional facts alleged in its complaint after the defendant challenged them).

**C.     Plaintiffs' Allegations**

{10}     Given this standard of review, we set out Plaintiffs' allegations in some detail. Here, Plaintiffs made the following assertions:

2.      [Dr. Frezza] is licensed to practice medicine in the State of New Mexico[;]

. . . .

6.      Plaintiff[s'] cause[s] of action arise[] from Dr. Frezza's and Presbyterian's transaction of business within the State of New Mexico through which Dr. Frezza and Presbyterian undertook to encourage New Mexico citizens to travel to Lubbock, Texas where they would receive bariatric surgery from Dr. Frezza[;]

7.      Dr. Frezza used a combination of advertising in New Mexico, testimonials from former New Mexican patients, and a special relationship with Presbyterian to encourage New Mexico residents to seek treatment from him . . . [;]

8.      Dr. Frezza encouraged his patients to use his website to provide testimonials, prominently noting their status as New Mexico residents, in order to encourage other New Mexico residents to seek treatment from him[;]

9.      Dr. Frezza used his website to reach New Mexico residents . . . [;]

10.     Dr. Frezza's advertising in New Mexico . . . and the special relationship he developed with Presbyterian were successful

6

efforts undertaken by [him] to secure patients from New Mexico, which constitute[s] the transaction of business within the [s]tate[;]

. . . .

12. Dr. Frezza . . . on numerous occasions traveled to Santa Fe and saw or treated patients during the trip . . . [;]

13. On information and belief, Dr. Frezza owns six tracts of real property in the State of New Mexico, County of Taos, and is therefore also subject to general jurisdiction in . . . New Mexico[;]

14. [Two] of many New Mexico citizens who learned of Dr. Frezza through his advertising and [were] told by Presbyterian that Dr. Frezza was the only "in network" bariatric surgeon from whom [they] could receive treatment [were P]laintiffs, who traveled to Lubbock, Texas for surgery by Dr. Frezza[;]

15. [Plaintiff[s'] causes of action arise[] directly from Dr. Frezza's transaction of business within the State of New Mexico.

{11} Thus, Plaintiffs asserted that Dr. Frezza had four types of contact with New Mexico: (1) a website, (2) a New Mexico medical license, (3) ownership of property in New Mexico, and (4) a relationship with Presbyterian. On appeal, they also argue that a book by Dr. Frezza called *The Business of Surgery*, in which the author discusses strategies for negotiating beneficial managed care agreements and which is available in New Mexico, provides another contact with this state. In support of these allegations, Plaintiffs offered a print out of Dr. Frezza's website, selected pages from Dr. Frezza's book, and copies of the deeds to property in New Mexico owned by Dr. Frezza.

## D. Dr. Frezza's Affidavits

{12} Dr. Frezza challenged Plaintiffs' jurisdictional assertions by presenting his own affidavit as well as an affidavit by Lori Velten, the Managing Director of Provider-Payor Relations at the Center. In addition to these affidavits, Dr. Frezza provided a copy of the "[s]pecialty [s]ervices [a]greement" (the agreement) between Presbyterian and Texas Tech Physicians Associates (TTPA), an organization established by the Center to handle managed care contracting.

{13} In his affidavit, Dr. Frezza stated that he was a "participating provider" with Presbyterian and that he "did not solicit patients from the State of New Mexico [but] treated several New Mexico residents who traveled to Texas by virtue of [his] status as a participating provider with . . . Presbyterian." He stated that he "ha[s] never practiced medicine in the State of New Mexico" and "never provided care or treatment to any of [his] patients in New Mexico." He stated that he "did not engage in any advertising activities that were directed at residents of New Mexico" and that "[he] was unaware of any advertising activities by [the Center] that were undertaken in New Mexico." Finally, he stated that he "did not personally seek to become credentialed with . . . Presbyterian. Rather, [TTPA] was credentialed with . . . Presbyterian. As a member of that group, [he] was required to submit a credentialing application to . . . Presbyterian."

8

{14} Ms. Velten stated in her affidavit that "TTPA decides what insurance will be accepted by [TTPA] physicians and health care providers" and that Dr. Frezza "did not have the authority to decide which insurance he would or would not accept." She also stated that Dr. Frezza "was subject to the [a]greement [with Presbyterian]." Finally, she stated, "As an employee of [the Center], and contracted with TTPA, Dr. Frezza was requested to submit a credentialing application to [the Center] and TTPA pursuant to the separate delegated credentialing agreement."

**E.      Analysis**

{15} Plaintiffs argue that New Mexico has both general and specific jurisdiction over Dr. Frezza. Our next step, therefore, is to examine the alleged bases for each to see whether they establish the contacts necessary for jurisdiction. Consistent with our standard of review, we compare Plaintiffs' complaints with the evidence submitted by Dr. Frezza to see if Plaintiffs' assertions of jurisdiction were challenged. *See Plumbers Specialty Supply Co. v. Enter. Prods. Co.*, 1981-NMCA-083, ¶ 9, 96 N.M. 517, 632 P.2d 752 (examining which of the alternate bases for jurisdiction were challenged and holding that "[i]nasmuch as one ground of alleged jurisdiction was not challenged, . . . the trial court did not err in [denying the defendant's motion to dismiss and request for an evidentiary hearing]"). We address general jurisdiction first.

**1.      General Jurisdiction**

{16}      Plaintiffs argue that Dr. Frezza's website, medical license, book, property ownership, and agreement with Presbyterian are contacts sufficiently "continuous and systematic" to give New Mexico general jurisdiction over Dr. Frezza. *See Zavala*, 2007-NMCA-149, ¶ 12.  We examine each assertion in turn.  We conclude that none of the first four bases is sufficient to establish general jurisdiction.  We also conclude that there are factual questions related to the agreement with Presbyterian and that resolution of those questions is a prerequisite to determining whether the agreement is a sufficient contact with New Mexico.

**Website**

{17}      "Establishment of a passive website that can be viewed internationally is not sufficient to support general personal jurisdiction absent some showing that the website targeted New Mexico." *Id.* ¶ 20.  Plaintiffs argue that Dr. Frezza's website targeted New Mexico residents by listing his New Mexico medical license and including testimonials by New Mexico residents, and that it was not merely passive because it "encouraged" visitors to submit testimonials through the website.  We disagree.

{18}      First, the inclusion of Dr. Frezza's licensure status and testimonials by New Mexico residents does not by itself indicate that the website targeted New Mexico.

10

Dr. Frezza's website also indicated that he was licensed by Texas, Illinois, and Pennsylvania. Statement of the fact that he held those licenses does not target residents of those states because (1) all that is required for Dr. Frezza to practice in Texas is a Texas license; and (2) there is no indication in the record that the requirements for a New Mexico license differ from those for a Texas license such that a doctor with a New Mexico license would be more attractive to a New Mexico resident. *Cf. Schexnayder v. Daniels*, 187 S.W.3d 238, 249 (Tex. App. 2006) (stating that a website that included the defendant's "biography, credentials, and job description" was "informational in nature"); *Advance Petroleum Serv., Inc. v. Cucullu*, 614 So. 2d 878, 880 (La. Ct. App. 1993) (holding that listing a Louisiana law license on a Texas lawyer's letterhead is not an advertisement targeted to Louisiana clients and instead "should be considered merely a listing of professional accomplishment"). Similarly, testimonials on the website may be read by any visitor to the site and are equally persuasive regardless of the submitter's state of residence. In other words, the fact that a testimonial was written by a New Mexico resident does not necessarily make it particularly compelling to other New Mexicans. In addition, there is nothing about the site that specifically solicits testimonials by New Mexico patients. *Cf. Snowney v. Harrah's Entm't, Inc.*, 112 P.3d 28, 34 (Cal. 2005) ("By touting the proximity of their hotels to California and providing driving directions

11

from California to their hotels, [the] defendants' [w]eb site specifically targeted residents of California.").

{19} Plaintiffs rely on *Silver v. Brown*, 382 F. App'x 723, 730 (10th Cir. 2010), to argue that an assessment of whether the website targeted New Mexico residents hinges on "not who *could* access the site, but who is most likely to—here, patients considering surgery by [Dr. Frezza]." In that case, after a business transaction between Silver and Brown went sour, Brown created a blog called "A Special Report on David Silver and [Silver's company]" on which he warned other companies against doing business with Silver and called Silver a thief. *Id.* at 725. The court rejected the lower court's determination that the blog did not target New Mexico, stating that the district court's "analysis disregard[ed] the ubiquitous nature of search engines." *Id.* at 730. It concluded that because of "sophisticated" search engines, "it is becoming . . . irrelevant . . . how many worldwide or nationwide internet connections there are . . . because . . . the people that are searching for information on *this* David Silver are the ones who are going to end up viewing Mr. Brown's blog." *Id.* In addition, there was evidence that Brown purposefully sought to "optimiz[e]" the site so that it would be easier for New Mexico residents to find using a search engine. *Id.* Since it was clear that Brown intended the impact of the blog to be felt in New Mexico, the court concluded that the blog targeted New Mexico. *Id.* (stating

12

that "[a]ctions that are performed for the very purpose of having their consequences felt in the forum state are more than sufficient to support a finding" that they targeted the forum state. (internal quotation marks and citation omitted)). The court held that specific personal jurisdiction over Brown was proper. *Id.* at 731.

{20}     *Silver* is inapposite. There the court was considering whether the blog was sufficient to permit specific, not general, jurisdiction. *Id.* at 728. Thus the analysis necessarily addressed whether the tortious conduct arose out of the contact with the forum state, i.e., the blog. Here, the issue is whether Dr. Frezza's contacts with New Mexico through the website are continuous and systematic. As discussed, the standards for these types of personal jurisdiction are different.

{21}     In addition, the *Silver* court noted that the blog "was about a New Mexico resident and a New Mexico company [and] complained of . . . Silver's . . . actions in the failed business deal [which] occurred mainly in New Mexico." *Id.* at 729-30. It also noted that "Brown had knowledge that the brunt of the injury to . . . Silver would be felt in New Mexico." *Id.* at 730. These facts indicated that Brown "expressly aimed his blog at New Mexico." *Id.* at 729. The mere listing of a New Mexico medical license and inclusion of testimonials by New Mexico residents are simply not of the same quality and do not demonstrate that Dr. Frezza targeted this state.

{22} Second, the website is not sufficiently interactive. "[I]mplicit in 'interactive' activity is the exchange of information between parties." *Fenn v. Mleads Enters., Inc.*, 2006 UT 8, ¶ 21, 137 P.3d 706; *see Merriam-Webster Dictionary,* http://www.merriam-webster.com/dictionary/interactive (last visited Dec. 2, 2014) (defining "interactive" as "mutually or reciprocally active" or "involving the actions or input of a user"). Here, the submission of testimonials through the website was a one-way process. *Cf. Sublett v. Wallin*, 2004-NMCA-089, ¶ 30, 136 N.M. 102, 94 P.3d 845 (holding a website insufficiently interactive to establish specific jurisdiction where "[t]he only interactive feature of the website . . . was the 'Locate an inspector' feature, which requested minimal information and provided little more than additional advertising information, i.e., contact information and background information on [a local inspector]"). Because there is no indication in the record that the website passed any information back to the user based on submission of his or her testimonial and Plaintiffs do not assert that it did, Dr. Frezza's website is even less interactive than that in *Sublett*. We conclude that the website neither targets New Mexicans nor is sufficiently interactive to demonstrate that Dr. Frezza purposefully directed it toward New Mexico. *See Zavala*, 2007-NMCA-149, ¶ 20.

**Medical License**

{23} Plaintiffs maintain that the "[m]ost notable" contact Dr. Frezza had with New Mexico was his New Mexico medical license. Dr. Frezza held the license from January 2006 to July 2009. In July 2009, Dr. Frezza's status was changed to "inactive." Thus, Dr. Frezza did not hold an active New Mexico medical license at the time of the surgeries or at the time of the filing of Plaintiffs' complaints.

{24} We pause here to address the appropriate time frame relevant to the general jurisdiction analysis. Several New Mexico cases state that "[a]s a general rule, the existence of personal jurisdiction may not be established by events which have occurred after the acts which gave rise to [a p]laintiff's claims." *Doe*, 1996-NMCA-057, ¶ 19; *Tercero v. Roman Catholic Diocese of Norwich, Conn.*, 2002-NMSC-018, ¶ 9, 132 N.M. 312, 48 P.3d 50. Both of these cases cite *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987), in which the court stated that "courts must examine the defendant's contacts with the forum at the time of the events underlying the dispute when determining whether they have jurisdiction." But this statement was made in the context of specific jurisdiction, not general jurisdiction. *See id.* (referencing specific jurisdiction); *DVI, Inc. v. Superior Court*, 128 Cal. Rptr. 2d 683, 698 (2002) (stating that the *Steel* holding referred to specific jurisdiction). In addition, neither *Tercero* nor *Doe* distinguished between "specific jurisdiction" or

"general jurisdiction," but both cases hinged on whether the cause of action arose out of the enumerated acts in New Mexico's "long-arm statute," NMSA 1978, § 38-1-16 (1971). *See Tercero*, 2002-NMSC-018, ¶ 10 (stating that jurisdiction based on the transaction of business prong of the long-arm statute is consistent with due process "only if the cause of action arises from the particular transaction of business" (internal quotation marks and citation omitted)); *Doe*, 1996-NMCA-057, ¶ 12 (stating that the appropriate test was "whether (1) the acts of the defendant are specifically set forth in this state's long-arm statute, (2) the plaintiff's cause of action arises out of and concerns such alleged acts, and (3) the defendant's acts establish minimum contacts to satisfy constitutional due process concerns"). It is not entirely clear, therefore, that the statements in those cases as to the appropriate time frame apply in the general jurisdiction context. 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1067.5 (3d ed. 2002) ("As a practical matter, a general jurisdiction inquiry is very different from a specific jurisdiction inquiry.").

**{25}** The parties did not identify any New Mexico cases explicitly addressing the time frame for a general jurisdiction analysis, nor did our own research uncover one. *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569 (2d Cir. 1996) ("Few cases discuss explicitly the appropriate time period for assessing whether a defendant's contacts with the forum state are sufficiently 'continuous and systematic'

16

for the purposes of general jurisdiction."). In addition, "[t]he [United States] Supreme Court never has spoken on the issue of determining the proper time[]frame for the defendant's contacts with the forum [in a general jurisdiction analysis]." Wright, *supra* (Supp. 2014). This issue raises two questions. "First, it must be determined whether continuous and systematic contacts need to exist at the time the claim accrues, or at the time the lawsuit is filed." *Id.* The courts appear divided on this question. *See id.* n.11.50 (collecting cases). *But see Harlow v. Children's Hosp.*, 432 F.3d 50, 64 (1st Cir. 2005) ("It is settled law that unrelated contacts which occurred after the cause of action arose, but before the suit was filed, may be considered for purposes of the general jurisdiction inquiry."). The second question is "how far back from either the accrual or filing of the claim [courts] will look[.]" Wright, *supra* (Supp. 2014). "[M]ost courts use a 'reasonable time' standard yielding time[]frames of roughly three to seven years." *Id.*; *see, e.g.*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 410-11, 415-16 (1984) (examining contacts over seven-year period (1970-1977), including after the 1976 accident from which the plaintiff's claims arose, in a general jurisdiction analysis).

{26} We need not determine whether general jurisdiction in New Mexico depends on contacts extant at the time a claim accrued or at the time the complaint is filed, however, because even if we consider the medical license in our analysis, we

17

conclude that possession of a medical license is not sufficient in and of itself to subject Dr. Frezza to general jurisdiction in New Mexico courts. The general rule gleaned from cases in sister states is that possession of a medical license in the forum state may be considered a contact for purposes of general jurisdiction but is not sufficient on its own. For instance, in *Etchebarne-Bourdin v. Radice*, the District of Columbia Court of Appeals held that where "there [was] no allegation that the doctors maintained their [District of Columbia] licenses in order to solicit patients in the District[,]" the fact "that the doctors maintained medical licenses to practice in the District cannot, without more, serve as a basis for jurisdiction under the 'transacting any business' subsection of the [D.C. long-arm] statute." 982 A.2d 752, 759 (D.C. 2009). Similarly, in *Modlin v. Superior Court*, the California Court of Appeals held that the defendant's contacts with California were "tenuous at best" and insufficient for general jurisdiction where the contacts consisted of possession of a California medical license and three trips to California in four years. 222 Cal. Rptr. 662, 665 (Ct. App. 1986); *see also Ghanem v. Kay*, 624 F. Supp. 23, 25 (D.D.C. 1984) ("A nonresident physician who arranges to be licensed in the District [of Columbia] would not by this act alone reasonably anticipate being required to defend a suit brought in the District . . . [but] where a nonresident physician is not only licensed in a jurisdiction but carries on significant activities within that jurisdiction, the due

18

process requirement of minimum contacts between a defendant and a forum state is satisfied."); *Dean v. Johns*, 789 So. 2d 1072, 1079 (Fla. Dist. Ct. App. 2001) ("The various activities of [the Alabaman defendant], including the relationships he has developed with referring Florida physicians to treat Florida patients and his maintenance of a Florida medical license, easily pass the minimum contacts test of the Due Process Clause."); *Estate of Jones v. Phillips ex rel. Phillips*, 992 So. 2d 1131, 1141 (Miss. 2008) (considering licensure in the forum state as well as arrangements the defendant made to treat the plaintiff in the foreign state); *accord Hines v. Clendenning*, 1970 OK 28, 465 P.2d 460, 463; *cf. Eastboro Found. Charitable Trust v. Penzer*, 950 F. Supp. 2d 648, 655-56 (S.D.N.Y. 2013) (concluding that possession of a law license does not confer jurisdiction on the licensing state and collecting cases); *Katz v. Katz*, 707 A.2d 1353, 1357 (N.J. Super. Ct. App. Div. 1998) ("We are equally convinced that the defendant's license to practice law in this state does not afford a basis to exercise *in personam* jurisdiction over him in a matter totally unrelated to his professional license.").

**Property**

{27}     Plaintiffs also point to Dr. Frezza's ownership of property in New Mexico. They argue that Dr. Frezza "purposefully availed himself of the protections and benefits of New Mexico law by purchasing land here and making some use of that

19

land." The land was purchased after the surgeries but before Plaintiffs' complaints were filed. The timing of these land purchases thus implicates the same questions raised above. Nevertheless, we conclude that even if we consider the land purchases, they are insufficient to demonstrate that Dr. Frezza had continuous and systematic contact with New Mexico such that he could expect to be haled into court here. *See Zavala*, 2007-NMCA-149, ¶ 12 ("If a defendant has continuous and systematic contacts with New Mexico such that the defendant could reasonably foresee being haled into court in that state for any matter, New Mexico has general personal jurisdiction." (alteration, internal quotation marks, and citation omitted)). Like a medical license, Dr. Frezza's ownership of property can be considered as a contact with New Mexico but it is not sufficient on its own to establish jurisdiction over him. *Rush v. Savchuk*, 444 U.S. 320, 328 (1980) ("[T]he mere presence of property in a [s]tate does not establish a sufficient relationship between the owner of the property and the [s]tate to support the exercise of jurisdiction over an unrelated cause of action."); *cf. F.D.I.C. v. Hiatt*, 1994-NMSC-044, ¶ 10, 117 N.M. 461, 872 P.2d 879 (considering property ownership in assessment of jurisdiction).

**Book**

{28} To the extent Plaintiffs argue that availability of Dr. Frezza's book, *The Business of Surgery*, in New Mexico provides a contact sufficient for general

20

jurisdiction, we are not persuaded. Even if we accept Plaintiffs' assertion that "[u]ndoubtedly, [Dr. Frezza] expects the State of New Mexico to protect his copyright . . . and has a plan for the commercial success of his book and its distribution in New Mexico[,]" the distribution of Dr. Frezza's book in New Mexico does not rise to the level of contact required by the Due Process Clause for general jurisdiction. *Cf. Sproul*, 2013-NMCA-072, ¶ 14 ("[T]he flow of a manufacturer's goods into the forum state alone does not create sufficient ties with that state to give it general jurisdiction over the manufacturer.").

{29} Plaintiffs rely on *Beh v. Ostergard* for the proposition that "a plan [for distribution in New Mexico] is sufficient for general jurisdiction to attach to [Dr. Frezza]." 657 F. Supp. 173, 178 (D.N.M 1987). The *Beh* court stated that jurisdiction would have been proper if the defendant there had "a regular distribution plan for his publications into New Mexico for which he derived commercial benefit[.]" *Id. Beh* is not persuasive for two reasons. First, the statement relied on was dicta not essential to the holding. *Id.* Second and more importantly, this statement was based on *Blount v. T D Publishing Corp.*, in which the New Mexico Supreme Court held that "placing . . . magazines in national channels of commerce . . . submits the publisher to jurisdiction in all states *where his product causes injury*." 1966-NMSC-262, ¶ 16, 77 N.M. 384, 423 P.2d 421 (emphasis added). This holding

21

obviously applies to specific jurisdiction. Thus neither *Beh* nor *Blount* are helpful to Plaintiffs' assertions related to general jurisdiction. *See* Wright, *supra* (noting the differences in the general and specific jurisdiction analyses); *see also Sproul*, 2013-NMCA-072, ¶ 16 (indicating that the contacts necessary for general jurisdiction are more substantial than those for specific jurisdiction).

**Arrangement with Presbyterian**

{30}    Plaintiffs argue that general jurisdiction is proper based on an "arrangement with Presbyterian . . . [which] secur[ed] for [Dr. Frezza] a virtual guarantee of New Mexico patient referrals." The parties do not dispute that (1) Dr. Frezza treated New Mexico residents, including Plaintiffs, referred to him by Presbyterian; (2) there were no bariatric surgeons in New Mexico at the time; (3) Dr. Frezza was a credentialed participating provider under the agreement between TTPA and Presbyterian; and (4) Dr. Frezza was bound by the agreement. Plaintiffs maintain that these facts are sufficient to establish the existence of a relationship between Dr. Frezza and Presbyterian through which Dr. Frezza "reached into [New Mexico] in order to attract [a] patient's business[.]" *Cronin*, 2000-NMCA-082, ¶ 26; *cf. Zavala*, 2007-NMCA-149, ¶ 21 (concluding that although "it is not necessarily sufficient by itself to justify the exercise of general personal jurisdiction[,]" Medicaid registration "may be a factor to consider" in a general jurisdiction analysis).

22

{31} We note that Dr. Frezza's arguments in the district court and on appeal take several different approaches. In his pleadings below, Dr. Frezza acknowledged that his status as a participating provider in Presbyterian's network established a relationship between him and the insurer. For instance, he analogized the agreement with Presbyterian to Medicaid registration and acknowledged that such registration can be considered a contact for purposes of general jurisdiction, implicitly acknowledging that the agreement was a contact between him and New Mexico. *See Zavala*, 2007-NMCA-149, ¶ 21. Nevertheless, he argued that this contact was insufficient for general jurisdiction. *See id.* He also made several references to "[t]he contractual relationship between Dr. Frezza and Presbyterian," arguing that it would not support specific jurisdiction because Plaintiffs' claims did not arise from it. In spite of these statements in his pleadings, in the hearing before the district court Dr. Frezza relied on the fact that he was not a party to the agreement and had no authority to decide which insurance he would accept to argue that "there is no contract between Dr. Frezza and Presbyterian." Similarly, on appeal, Dr. Frezza maintains that, because he was not an employee of TTPA, was not a party to the agreement, and had no authority to select with whom he would become a participating provider, the agreement cannot be considered a contact between him and New Mexico for purposes of jurisdiction. On appeal, he argues that "Plaintiff[s'] relationship with

23

Presbyterian[,] Presbyterian's relationship with TTPA[,] and TTPA's relationship with Dr. Frezza . . . cannot [be] combine[d] . . . to establish personal jurisdiction over Dr. Frezza."

{32} In support of his position at the hearing, Dr. Frezza submitted a copy of the agreement to the district court. The district court concluded that the fact that Dr. Frezza was not a party to the agreement was dispositive of whether Dr. Frezza had a relationship with Presbyterian. We disagree because this conclusion does not consider other facts surrounding the agreement, including, among other things, that Dr. Frezza was a participating provider bound by the agreement, that New Mexico patients were referred to him because of the agreement, and that there were no New Mexico bariatric surgery providers at that time. *See Sproul*, 2013-NMCA-072, ¶ 17 ("The question [of whether jurisdiction exists] cannot be answered by applying a mechanical formula or rule of thumb but [must be resolved] by ascertaining what is fair and reasonable under the circumstances." (alteration, internal quotation marks, and citation omitted)); *cf. Dunn v. Yager*, 58 So. 3d 1171, 1186 (Miss. 2011) (holding that Mississippi had general jurisdiction over the defendant where he "had participated in various [preferred provider organizations (PPOs)], which, *inter alia,* gave him access to more than 800,000 members of [a Mississippi PPO] as prospective clients" and recognizing that the defendant "solicited patients through the PPOs, as

24

an approved preferred provider" and the plaintiff's claim had been approved by a Mississippi insurer).

{33} Neither does the rest of the record provide sufficient facts for us to assess whether the arrangement with Presbyterian establishes a contact between Dr. Frezza and New Mexico. Ms. Velten's claims that Dr. Frezza had no authority to select which insurance he would accept do not address the extent of Dr. Frezza's rights and obligations arising out of a contract with an insurer once it is selected by TTPA. Dr. Frezza's repeated reliance on the fact that he is not an employee of TTPA likewise raises more questions than it answers. For instance, is Dr. Frezza a member, partner, or owner of TTPA? Is he a third-party beneficiary of TTPA's contract with Presbyterian? Is there a contract with TTPA that defines Dr. Frezza's relationship with it, as Ms. Velten's affidavit suggests, and/or do the terms of his employment with the Center define his rights and obligations with respect to TTPA? The nature of Dr. Frezza's relationships with both the Center and TTPA likely will inform the analysis of any relationship with Presbyterian.

{34} Plaintiffs also alleged that Dr. Frezza "used" or "developed" "a special relationship with Presbyterian to encourage New Mexico residents to seek treatment from him[.]" *See Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) (" 'Purposeful availment' requires that the defendant have performed some type of

affirmative conduct which allows or promotes the transaction of business within the forum state." (internal quotation marks and citation omitted)). Dr. Frezza challenged Plaintiffs' assertion through submission of the agreement and affidavits. But the agreement requires each participating provider to be "credentialed by [Presbyterian]." Ms. Velten stated in her affidavit that "Dr. Frezza was requested to submit a credentialing application to [the Center] and TTPA pursuant to the separate delegated credentialing agreement." The "separate credentialing agreement" is not in the record. Dr. Frezza stated in his affidavit that he "did not personally seek to become credentialed with . . . Presbyterian. Rather, [TTPA] was credentialed with . . . Presbyterian. As a member of that group, [he] was required to submit a credentialing application to . . . Presbyterian." The extent to which Dr. Frezza personally acted to become credentialed with Presbyterian is unclear from this record. For instance, although Dr. Frezza asserts that he did not "personally" seek to become credentialed, he also states that he submitted an application to become credentialed. At the same time that he asserts that TTPA was credentialed, he states that he submitted his own credentialing application to Presbyterian.

{35} We conclude that, even if we view Plaintiffs' assertions and Dr. Frezza's evidence in the light most favorable to jurisdiction, *Cronin*, 2000-NMCA-082, ¶ 10, the parameters of the relationship are unclear such that we cannot assess whether it

26

is a contact sufficient for general jurisdiction. *Cf. Russell v. SNFA*, 946 N.E.2d 1076, 1080-81 (Ill. App. Ct. 2011) ("If we find that [the] plaintiff has made a *prima facie* case for jurisdiction, we must then determine if any material evidentiary conflicts exist. If a material evidentiary conflict exists, we must remand the case to the trial court for an evidentiary hearing." (citation omitted)); *Sorezza v. Scheuch*, No. 19717/07, 2008 WL 2186175, at *6 (N.Y. Sup. Ct. May 13, 2008) (denying a motion for dismissal and stating, "Absent further discovery concerning the nature of the contractual agreement or arrangement between BlueCross/Blue Shield and the defendant with respect to his 'participating provider' status, the court is constrained from determining whether such agreement or arrangement would qualify as a business transaction [under New York's long-arm statute]"). For instance, it remains unclear to what extent Dr. Frezza was bound by or benefitted from the agreement, whether the agreement required Dr. Frezza to accept Presbyterian patients, to what extent Dr. Frezza himself sought to become credentialed with Presbyterian, and, perhaps most importantly, whether and how Dr. Frezza became the sole provider of bariatric surgery services to Presbyterian's members. *Cf. Almeida v. Radovsky*, 506 A.2d 1373, 1375 (R.I. 1986) (relying on the specific terms of the defendants' agreement with a Rhode Island insurer and the fact that the insurer did not refer Rhode Island patients to the defendants to hold that there were insufficient contacts for

27

jurisdiction). We therefore turn to whether Plaintiffs have made a prima facie showing of specific jurisdiction.

**2.     Specific Jurisdiction**

{36}     Plaintiffs argue that New Mexico has specific personal jurisdiction over Dr. Frezza because their claims arose from surgeries performed pursuant to Dr. Frezza's relationship with Presbyterian.[1] Even if Dr. Frezza's relationship with Presbyterian is insufficient for general jurisdiction, it may nonetheless be sufficient for specific jurisdiction. *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 715 (4th Cir. 2002) ("[T]he threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction." (internal quotation marks and citation omitted)). The district court determined that Plaintiffs' claims arose from medical care provided in Texas, rejecting Plaintiffs' argument that they arose from Dr. Frezza's relationship with Presbyterian. The district court therefore concluded that it "[could not] exercise specific jurisdiction over Dr. Frezza" because Plaintiffs' claims were not connected with any contacts between Dr. Frezza

---

[1]In a cursory argument, Plaintiffs contend that specific personal jurisdiction is appropriate because Dr. Frezza traveled to New Mexico and consulted with at least one patient here. However, they do not explain how their injuries arose from this contact. We therefore decline to address this argument. *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be.").

28

and New Mexico. In doing so, the district court avoided analyzing whether there was a relationship between Dr. Frezza and Presbyterian sufficient for specific jurisdiction.

{37} The district court's rejection of Plaintiffs' contention that their claims arose from a relationship between Dr. Frezza and Presbyterian rests on an overly narrow construction of the requirement that the claims must "arise from" Dr. Frezza's contact with New Mexico. In *Goodyear Dunlop Tires*, the United States Supreme Court stated that specific jurisdiction applied when the claims "deriv[e] from, or [are] connected with" the defendant's contacts. 131 S. Ct. at 2851 (internal quotation marks and citation omitted); *accord Helicopteros Nacionales*, 466 U.S. at 414 (using the phrase "arise out of or relate to" in discussing specific jurisdiction). This language permits a more expansive construction than that applied by the district court. Similarly, our cases have held that "for New Mexico to assert specific jurisdiction over a nonresident defendant, the plaintiff's claim must 'lie in the wake' of the defendant's commercial activities in New Mexico." *Sproul*, 2013-NMCA-072, ¶ 17 (alteration omitted) (quoting *Visarraga*, 1986-NMCA-021, ¶ 15). For example, in *Kathrein v. Parkview Meadows, Inc.*, a New Mexican plaintiff sued an Arizona defendant for "emotional and psychological trauma" she suffered after attending "Family Week" at a treatment center where her husband was being treated. 1984-NMSC-117, ¶ 3, 102 N.M. 75, 691 P.2d 462. The Court held that the cause of action

29

was "a direct outgrowth of [the] defendant's general solicitation for business in New Mexico" where the defendant had "advertised its alcoholism treatment center in the yellow pages of the Albuquerque telephone directory[,] . . . contacted the director of [a New Mexico organization] to solicit . . . referral of patients to the treatment center[,] . . . mail[ed] a brochure [to the plaintiff], inviting her to attend the treatment program's 'Family Week[,]' [and] telephoned [the] plaintiff from Arizona, to encourage her attendance." *Id.* ¶¶ 2, 4; *see Cronin*, 2000-NMCA-082, ¶ 16 (agreeing with the plaintiffs that their claims arose from the hospital's transaction of business in New Mexico because "but for [the h]ospital's solicitations, [the p]atient would not have sought treatment at [the h]ospital nor would he have endured certain health complications arising from [the doctor's] prescription and [the d]efendants' negligent failure to monitor the administration of potentially ototoxic antibiotics"); *see also Presbyterian Univ. Hosp. v. Wilson*, 654 A.2d 1324, 1331 (Md. 1995) (stating that the hospital's "voluntary efforts to register as a Maryland [Medicaid] provider and to be designated as a liver transplant referral center served in many respects to effectively solicit Maryland residents to seek treatment" at the hospital and that "[t]hese general business contacts are directly related to the [medical negligence and wrongful death] action and serve as support for the finding of specific jurisdiction").

30

{38}   Consistent with *Kathrein* and *Cronin*, we conclude that, if the alleged relationship exists, Plaintiffs' claims here are sufficiently connected with it . The fact that Dr. Frezza may have been the only provider covered by Presbyterian and thus Plaintiffs had no option to seek treatment in New Mexico only strengthens the connection between the two.  But because the district court did not address the alleged relationship in the context of specific jurisdiction, there is no factual record addressing "the precise nature of the defendant's contacts with the forum, the relationship of these contacts with the cause of action, and [] weighing . . . whether the nature and extent of contacts . . . between the forum and the defendant . . . satisfy the threshold demands of fairness." *Presbyterian Univ. Hosp.*, 654 A.2d at 1330 (second and third omissions in original) (internal quotation marks and citation omitted).  The same questions about the relationship identified in our discussion of general jurisdiction apply in an analysis of specific jurisdiction.  Hence we expect the district court will address them on remand in both contexts.

**3.     Fair Play and Substantial Justice**

{39}   "The United States Supreme Court has held that even if a defendant has established sufficient minimum contacts with the forum state, the Due Process Clause forbids the assertion of personal jurisdiction over that defendant under circumstances that would offend traditional notions of fair play and substantial justice."

*Sproul*, 2013-NMCA-072, ¶ 35 (internal quotation marks and citation omitted). Since we have concluded that an evidentiary hearing is necessary to clarify Dr. Frezza's contacts with New Mexico and the strength of those contacts will affect the analysis of whether it is unfair to assert jurisdiction over him, we do not address this issue except to provide guidance on two points. First, Dr. Frezza argues on appeal that he would be substantially burdened by having to defend himself in New Mexico because (1) he is immune from suit under Texas law and (2) Texas courts are "better situated [than New Mexico courts] to deal with the issues inherent in applying Texas's Tort Claims Act." Both of these arguments assume that the Texas Tort Claims Act will apply to this case, a proposition we rejected in the companion case, *Montaño*, COA No. 32,403, ¶ 39. He also argues that Texas has "significant public policy interests in litigating th[ese] case[s]" because he is a government employee. Although we recognize that Texas has an interest in this case, we have concluded that, under the facts of these cases, New Mexico has an equal or greater interest. *See id.* ¶ 30. Finally, we reject this line of reasoning because, although there is some overlap, the personal jurisdiction and choice of law inquiries are distinct and different. The United States Supreme Court cautioned against entwining the two analyses, stating that "[t]he question of [whether the forum state's law applies] presents itself in the course of litigation only after jurisdiction over [the] respondent is established, and we

do not think that such choice of law concerns should complicate or distort the jurisdictional inquiry." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 778 (1984).

{40}     Second, the district court concluded that "[e]xercising personal jurisdiction over Dr. Frezza in New Mexico would violate traditional notions of fair play and substantial justice" because "many of the important fact witnesses in this case reside in Texas and . . . Dr. Frezza will be unable to compel fact witnesses in Texas, including the healthcare providers who subsequently treated Plaintiff[s] and allegedly diagnosed [their] complications, to testify in person at trial in New Mexico." At the hearing, the district court stated that it would be a "horrible trial if we have to show the jury video tapes of those people [because the jury] would be asleep." Even if we construe these findings as addressing the burden on Dr. Frezza and efficiency of the trial, there is nothing in the record indicating that the district court considered the other *Zavala* factors, such as "New Mexico's interest, the plaintiff's interest, . . . and the interest in promoting public policy." 2007-NMCA-149, ¶ 12. In addition, it is difficult to see how the concerns voiced by the district court establish the unconstitutionality of New Mexico's assertion of jurisdiction. On remand, the district court should consider all of the *Burger King* factors in relation to the strength of Dr. Frezza's contacts with New Mexico in assessing the fairness of personal jurisdiction over him. *See Burger King Corp.*, 471 U.S. at 476 (stating that if "it has been decided

33

that a defendant purposefully established minimum contacts within the forum [s]tate, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice" (internal quotation marks and citation omitted)); *Salas v. Homestake Enters. Inc.*, 1987-NMSC-094, ¶ 6, 106 N.M. 344, 742 P.2d 1049 (citing *Burger King* and considering the defendant's contacts in assessment of the fairness of jurisdiction).

**F.        CONCLUSION**

{41}      For the foregoing reasons, we remand for further proceedings consistent with this Opinion.

{42}      **IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**CYNTHIA A. FRY, Judge**

34