This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39669**

**MARC GRANO, as Personal Representative of the Estate of Jose Barron, BEVERLY BARRON; KELLY BARRON; and JOSHUA BARRON, individually,**

      Plaintiffs-Appellants,

v.

**HCA HEALTHCARE, INC.; C-HCA, INC.; HCA HEALTH SERVICES OF TENNESSEE, INC.; and EL PASO HEALTHCARE SYSTEM, LTD. d/b/a LAS PALMAS MEDICAL CENTER,**

      Defendants-Appellees,

and

**HSCGP, LLC; PHC-LAS CRUCES, INC. d/b/a MEMORIAL MEDICAL CENTER; and LAS CRUCES PHYSICIAN PRACTICES, LLC,**

      Defendants.

**APPEAL FROM THE DISTRICT COURT OF SAN MIGUEL COUNTY**
**Flora Gallegos, District Court Judge**

Law Office of James H. Wood PC
James H. Wood
Arslan S. Umarov
Zacary E. Wilson-Fetrow
Albuquerque, NM

for Appellants

Shannon, Martin, Finkelstein, Alvarado & Dunne, P.C.

Elizabeth (Lisa) D. Alvarado
Houston, TX

for Appellees HCA Healthcare, Inc., C-HCA, INC., and HCA Health Services of Tennessee, Inc.

Serpe Andrews, PLLC
John S. Serpe
Houston, TX

for Appellees

## MEMORANDUM OPINION

**WRAY, Judge.**

**{1}** Plaintiffs, family members and the personal representative of the estate of a New Mexico resident, Jose Barron (Decedent), appeal the district court's dismissal of El Paso Healthcare System, Ltd., d/b/a Las Palmas Medical Center (Defendant)[1] for lack of personal jurisdiction. We affirm.

## BACKGROUND

**{2}** Plaintiffs alleged that Decedent underwent a biopsy procedure at Memorial Medical Center (MMC) in Las Cruces, New Mexico and suffered a carotid artery bleed after the removal of an endotracheal tube from his airway. MMC transferred Decedent to one of Defendant's two hospitals in El Paso, Texas—Las Palmas Medical Center (Las Palmas)—pursuant to a transfer agreement between MMC and Las Palmas. Decedent was transferred so that Las Palmas would "perform a permanent repair of the carotid artery and fix the pseudoaneurysm on the artery," but Plaintiffs alleged that MMC failed to communicate the location requiring the repair to Las Palmas and that Las Palmas did not "do a definitive repair of [Decedent's] carotid artery, nor fix the pseudoaneurysm." Following discharge from Las Palmas, Decedent "sought help at [MMC]" and, two days later, after not receiving "proper care," died at home in New Mexico. We present additional factual and procedural background as it becomes necessary to our analysis.

## DISCUSSION

---

[1]This appeal stems from an order granting the dismissal of Defendant and other defendants, HCA Healthcare, Inc., C/HCA, Inc. and HCA Health Services of Tennessee, Inc. (collectively, HCA Defendants), for lack of personal jurisdiction. The district court granted Defendant's and the HCA Defendants' Rule 1-012(B)(2) NMRA motions in the same order. Plaintiffs appealed the dismissal of Defendant and the HCA Defendants, but in briefing, Plaintiffs make no argument as to the HCA Defendants.

**{3}**     Plaintiffs argue on appeal that Defendant, a nonresident hospital, is subject to personal jurisdiction in New Mexico arising from Plaintiffs' allegations that medical malpractice that occurred in Texas was a cause of Decedent's death in New Mexico. We first briefly address Plaintiffs' alternative request for remand for jurisdictional discovery against Defendant. Plaintiffs do not identify any specific discovery that would lead to facts sufficient to support personal jurisdiction over Defendant and acknowledge that they did not request jurisdictional discovery related to Defendant in the district court. *Cf. Butler v. Deutsche Morgan Grenfell, Inc.*, 2006-NMCA-084, ¶ 39, 140 N.M. 111, 140 P.3d 532 (noting that the party requesting discovery made no "specific allegations regarding what he hoped to find in discovery" and his "vague assertions" for more discovery were insufficient to defeat a motion to dismiss made on statute of limitation grounds (internal quotation marks and citation omitted)). We therefore decline to remand for purposes of further discovery and turn to Plaintiffs' personal jurisdiction argument.

**{4}**     There is no dispute that Defendant is a foreign entity, incorporated in the state of Texas and holding a principal place of business in the state of Tennessee. The district court found that Defendant's registration under New Mexico's Uniform Revised Limited Partnership Act (URLPA), NMSA 1978, §§ 54-2A-901 to -908 (2007, as amended through 2010), "relate[d] to bariatric referrals for [Defendant's] bariatric facility in New Mexico" and was not sufficient "to establish continuous contacts," for the purposes of general personal jurisdiction, or to show "that they availed themselves of the privilege of conducting activities within New Mexico," for the purposes of specific personal jurisdiction. *See Gallegos v. Frezza*, 2015-NMCA-101, ¶ 6, 357 P.3d 408 (defining general and specific personal jurisdiction). Plaintiffs contend that Defendant is subject to both specific—or "case-linked"—personal jurisdiction and general—or "all-purpose"—personal jurisdiction. *See id.* (internal quotation marks and citation omitted). We consider first specific personal jurisdiction and then address Plaintiffs' general personal jurisdiction argument.

## I.     Plaintiffs Did Not Establish a Prima Facie Showing to Support the Exercise of Specific Personal Jurisdiction Over Defendant

**{5}**     We review de novo the district court's conclusion that there was no personal jurisdiction over Defendant. *See id.* ¶ 8. When the district court bases its rulings on the parties' pleadings and affidavits, this Court "construe[s] the pleadings and affidavits in the light most favorable to the complainant." *Id.* (internal quotation marks and citation omitted). Where, as here, a district court does not hold an evidentiary hearing, "[t]he complainant need only make a prima facie showing that personal jurisdiction exists." *Id.* (internal quotation marks and citation omitted). We agree with the parties that our inquiry on the question of personal jurisdiction involves "a single search for the outer limits of what due process permits." *Sproul v. Rob & Charlies, Inc.*, 2013-NMCA-072, ¶ 8, 304 P.3d 18 (internal quotation marks and citation omitted).

**{6}**     Specific, or "case-linked," personal jurisdiction, may be proper over a nonresident defendant, "if the defendant has certain minimum contacts with the forum state such

that the maintenance of the suit does not offend traditional notions of fair play and substantial justice and the cause of action is related to those contacts." *Chavez v. Bridgestone Ams. Tire Operations, LLC* (*Chavez III*), 2023-NMCA-022 ¶ 7, 527 P.3d 652 (internal quotation marks and citations omitted). The "central feature of minimum contacts is the requirement of purposeful availment," which occurs when a nonresident defendant has "purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.* (citation omitted) (text only). We have explained that

> a defendant is considered to have purposefully availed itself of the privilege of conducting activities within the forum state—and, in turn, establishing the minimum contacts necessary to be subject to specific personal jurisdiction—where the defendant's contacts are "the defendant's own choice and not random, isolated, or fortuitous" and where the defendant "deliberately reached out beyond its home—by, for example, exploiting a market in the forum state or entering a contractual relationship centered there."

*Id.* ¶ 8 (alteration omitted) (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.* (*Ford*), 592 U.S.___, 141 S. Ct. 1017, 1025 (2021). To examine a defendant's purposeful availment of the privilege to conduct activities within New Mexico, "we look at what activities the defendant directed toward New Mexico." *Id.* (internal quotation marks and citation omitted).

**{7}** Plaintiffs identify Defendant's contacts[2] with New Mexico as follows: (1) Defendant "understands that New Mexico residents receive treatment at" the three medical facilities it operates in El Paso, which borders New Mexico; (2) Defendant operates a bariatric referral clinic in Albuquerque, New Mexico, where "physicians evaluate potential candidates for weight loss surgery that" would be performed in El Paso; (3) Defendant directly solicits, markets, and advertises its bariatric referral services to New Mexicans, which amounts to soliciting, marketing, advertising, and offering "medical services" to New Mexicans; and (4) Defendant has transfer agreements with New Mexico hospitals generally, including the transfer agreement through which Decedent came to be treated at Las Palmas.[3] Plaintiffs argue that Defendant's operation of a bariatric referral clinic in Albuquerque, New Mexico amounts

---

[2]To the extent that Plaintiffs set forth an argument that because Decedent died in New Mexico, under the place-of-wrong rule, Defendant's alleged tort "reached into New Mexico," we reject the contention. The place-of-wrong rule relates to "which jurisdiction's law should apply to a tort action," a question not at issue before us. *Terrazas v. Garland & Loman, Inc.*, 2006-NMCA-111, ¶ 12, 140 N.M. 293, 142 P.3d 374. Further, while "the place of a plaintiff's injury and residence may be relevant in assessing the link between the defendant's forum contacts and the plaintiff's suit," it by itself "cannot create a defendant's contact with the forum state." *Chavez III*, 2023-NMCA-022 ¶ 14 (text only) (quoting *Ford*, 141 S. Ct. at 1031-32). Therefore, we do not consider the place-of-wrong doctrine.

[3]To the extent Plaintiffs argue that the transfer agreements alone are sufficient to establish minimum contacts, we disagree. *See Zavala v. El Paso Cnty. Hosp. Dist.*, 2007-NMCA-149, ¶¶ 23, 29, 143 N.M. 36, 172 P.3d 173 (holding that a transfer agreement with the purpose of "promot[ing] the continuity of care and the timely transfer of patients and records" between two hospitals cannot by itself support the exercise of either general or specific personal jurisdiction over a nonresident defendant).

to the cultivation of "a market for medical services," and that "a market for medical services" relates to the death of Decedent, which occurred in New Mexico. The Albuquerque bariatric referral clinic operates through one of Defendant's hospitals, the Del Sol Medical Center, in El Paso, Texas. At the bariatric referral clinic, physicians examine potential candidates for weight loss surgery that will be performed at Del Sol Medical Center. Defendant admits to advertising its bariatric referral services to New Mexicans, but denies conducting any other direct advertisements to residents of New Mexico. Defendant contends, and Plaintiffs admit, that the bariatric referral clinic had no part in the treatment of Decedent.

{8}     Plaintiff did not establish a prima facie case that Defendant intentionally acted to cultivate a market for medical services and not simply a market for bariatric patients who would travel to Texas for treatment. *See Chavez III*, 2023-NMCA-022, ¶ 7 (requiring for specific personal jurisdiction "*purposeful* availment" (emphasis added)); *Sproul*, 2013-NMCA-072, ¶ 17 ("Whether or not personal jurisdiction exists over a particular defendant is decided on a case-by-case basis."). While the record establishes that Defendant purposefully directed its activities at New Mexico to cultivate a market for bariatric services through the bariatric referral clinic, nothing demonstrates a purposeful effort to broadly cultivate a market for "medical services." *See Chavez III*, 2023-NMCA-022, ¶ 8 (requiring to establish sufficient minimum contacts that "the defendant 'deliberately reached out beyond its home—by, for example, exploiting a market in the forum [s]tate or entering a contractual relationship centered there'" (alteration omitted) (quoting *Ford*, 141 S. Ct. at 1025)). With Defendant's intentional contacts reduced from "medical services," as Plaintiffs would define them, to "bariatric referrals to Texas clinics," it becomes clear that Plaintiffs' cause of action is not related to Defendant's purposeful contacts in New Mexico. *See id.* ¶ 7 (permitting specific personal jurisdiction if, in relevant part, "the cause of action is related to [the] contacts"). To the contrary, all that is established is that in New Mexico, Defendant solicits and screens patients for a specific medical procedure that is performed in Texas.[4]

{9}     Citing case law from other jurisdictions, Plaintiffs assert that the "related to" factor, as recently articulated by the United States Supreme Court in *Ford*, supports a "broader framework" for analyzing specific jurisdiction, which "opens the door to subject [Defendant] to specific New Mexico personal jurisdiction," despite the fact that Defendant "did not provide the *bariatric* medical services" to Decedent. We agree with Defendant, however, that Plaintiffs construe *Ford* too broadly. As the *Ford* Court explained, "[T]he phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." 141 S. Ct. at 1026; *Chavez III*, 2023-NMCA-022, ¶ 10. For New Mexico courts to exercise specific personal jurisdiction over a nonresident defendant, "the plaintiff's claim must lie in the wake of the defendant's commercial activities in New Mexico." *Gallegos*, 2015-NMCA-101, ¶ 37 (internal

---

[4]In the answer brief, Defendant acknowledges that "[a]t most, *Ford* . . . conceivably allows a New Mexico resident to sue [Defendant] in New Mexico for claims related to whether a patient was an appropriate candidate for bariatric surgery." We relate this acknowledgment not to suggest our view on the matter but to observe that personal jurisdictional issues are particularly fact-bound and decided on a case by case basis. *See Sproul*, 2013-NMCA-072, ¶ 17.

quotation marks and citation omitted). This Court has recently explained that under *Ford*, "[p]laintiffs need not prove that the fatal accident occurred *because of* [the defendant's] contacts in New Mexico, but rather that the fatal accident is *related to* such contacts." *See Chavez III*, 2023-NMCA-022, ¶ 10.

**{10}** In *Ford*, the exercise of specific personal jurisdiction over the defendant, Ford Motor Company, was proper, because the contacts with the forum states—including advertising, selling, and servicing the particular car models at issue—"systematically served" the forum markets with the specific car models alleged to have caused the plaintiffs' injuries in the forum states. 141 S. Ct. at 1028. Thus, Ford Motor Company's contacts with the forums were related to the litigation. *Id.* ("So there is a strong relationship among the defendant, the forum, and the litigation—the essential foundation of specific jurisdiction." (internal quotation marks and citation omitted)). Similarly, this Court in *Chavez III* concluded that the car accident giving rise to the products liability litigation was "adequately related to [the defendant's] widespread contacts in New Mexico" due in part to the plaintiffs' claim that the defendant tire company failed to warn its service providers of the known risk that ultimately caused the accident. 2023-NMCA-022, ¶ 10. In the present case, unlike the car models in *Ford* and the tires in *Chavez III*, the bariatric referrals are not related to the alleged malpractice. We therefore conclude that the "relationship among [Defendant], the forum, and the litigation," is not "close enough to support specific personal jurisdiction." *See Chavez III*, ¶ 16 (internal quotation marks and citation omitted).

## II. Plaintiffs Abandoned the General Personal Jurisdiction Argument

**{11}** In the district court, Plaintiffs argued that Defendants consented to general personal jurisdiction by registering to do business in New Mexico under the URLPA, based on application of then-existing New Mexico law. *See Werner v. Wal-Mart Stores, Inc.*, 1993-NMCA-112, 116 N.M. 229, 861 P.2d 270, *overruled by*, *Chavez v. Bridgestone Ams. Tire Operations, LLC* (*Chavez II*), 2022-NMSC-006, 503 P.3d 332; *Rodriguez v. Ford Motor Co.*, 2019-NMCA-023, 485 P.3d 569, *rev'd*, *Chavez II*, 2022-NMSC-006. Plaintiffs maintained this issue in their docketing statement. Before Plaintiffs submitted their brief in chief, however, our Supreme Court issued *Chavez II*, which overruled *Werner* and reversed *Rodriguez*. *See Chavez II*, 2022-NMSC-006, ¶¶ 1, 54-56. Plaintiffs' brief in chief included no briefing on the general personal jurisdiction, consent-by-registration argument. Between the filing of the brief in chief and the submission of the reply brief, the Supreme Court of the United States granted certiorari in *Mallory v. Norfolk Southern Railway Company*, 266 A.3d 542 (Pa. 2021), *cert. granted*, 142 S. Ct. 2646 (mem.) (U.S. Apr. 25, 2022) (No. 21-1168). In the reply brief, Plaintiffs argue that a decision in *Mallory* could impact our Supreme Court's holding in *Chavez II* with regard to Defendant's URLPA registration. For that reason, Plaintiffs seek supplemental briefing on their consent-by-registration argument after any decision in *Mallory*. As we explain, we see no need for supplemental briefing.

**{12}** The question before the Supreme Court of the United States in *Mallory* is: "Whether the Due Process Clause of the Fourteenth Amendment prohibits a [s]tate from

requiring a corporation to consent to personal jurisdiction to do business in the [s]tate." *See* Brief for the Petitioner at (i), *Mallory v. Norfolk S. Ry. Co.*, No. 21-1168 (U.S. Jul. 5, 2022). Regardless of the outcome in *Mallory*, however, our Supreme Court's holding in *Chavez II* will remain intact, because our Supreme Court based its decision on statutory construction and not on due process considerations. *See* 2022-NMSC-006, ¶¶ 3-4 (declining to reach the constitutional challenge under the due process clause of the Fourteenth Amendment to the United States Constitution because "we hold, as a matter of statutory construction, that the [registration statute] does not require a foreign corporation to consent to general personal jurisdiction in New Mexico"). The grant of *certiorari* in *Mallory*, arising from due process considerations, has no impact on the statutory construction analysis underlying *Chavez II*. Thus, the general personal jurisdiction landscape has not changed since the time that Plaintiffs abandoned the general personal jurisdiction issue on appeal. *See Graham v. Presbyterian Hosp. Ctr.*, 1986-NMCA-064, ¶ 2, 104 N.M. 490, 732 P.2d 259 ("Issues not briefed are deemed abandoned."). We note as well that the issue was initially abandoned and raised again for the first time in Plaintiffs' reply brief. *See Jaramillo v. Fisher Controls Co.*, 1985-NMCA-008, ¶ 55, 102 N.M. 614, 698 P.2d 887 (declining to consider an issue raised in the reply brief but not in the brief in chief). For these reasons, we do not review the district court's determination regarding general personal jurisdiction.

**CONCLUSION**

**{13}** The dismissal of Defendant for lack of personal jurisdiction is affirmed.

**{14} IT IS SO ORDERED.**

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**MEGAN P. DUFFY, Judge**