10 P.3d 845

2000-NMCA-082

Kenneth D. CRONIN and Brigitte Cronin, Husband and Wife, Plaintiffs–Appellants,

v.

SIERRA MEDICAL CENTER, El Paso Southwestern Cardiovascular Associates, P.A., Kenneth–Eisenburg, M.D., Jerry W. Miller, M.D., Felice L. Bruno, M.D., and Joe Kidd, M.D., Defendants–Appellees,

and

Ralph Paone, M.D., Mountain Shadows Home Health Care Services, and H.W. Handy, M.D., Defendants.

No. 19,895.

Court of Appeals of New Mexico.

June 19, 2000.

Certiorari Denied, No. 26,515, Sept. 13, 2000.

522

Cynthia A. Fry, Albuquerque, NM, Jose R. Coronado, Law Offices of Jose R. Coronado, Las Cruces, NM, for Appellants.

William V. Ballew, III, Paul F. Grajeda, Scott, Hulse, Marshall, Feuille, Finger & Thurmond, P.C., El Paso, TX, Kathleen C. Horan Hatch, Allen & Shepherd, Albuquerque, NM, for Appellees El Paso Southwestern Cardiovascular Associates, P.A., Eisenberg, Bruno, & Kidd.

Larry W. Hicks, R. Duane Frizell, Hicks & Lucky, P.C., El Paso, TX, for Appellee Miller.

Cynthia S. Anderson, R. Shawn Oller, Kemp, Smith, Duncan & Hammond, P.C., El Paso, TX, for Appellee Sierra Medical Center.

## OPINION

PICKARD, Chief Judge.

{1} Kenneth Cronin and Brigitte Cronin (Plaintiffs) filed a medical malpractice lawsuit against Sierra Medical Center, El Paso Southwestern Cardiovascular Associates, P.A., Dr. Kenneth Eisenberg, Dr. Felice Bruno, Dr. Jerry Miller, and Dr. Joe Kidd (Defendants) after Mr. Cronin (Patient) experienced certain health complications arising out of heart bypass surgery. Plaintiffs, who reside in New Mexico, traveled to Texas so that Patient could undergo the surgery. Dr. Eisenberg performed the surgery at Sierra Medical Center (Hospital). The surgery was successful; however, Patient developed a staphylococcus aureus infection in his surgical wound. Dr. Eisenberg asked Dr. Bruno and Dr. Miller to help him treat the staph infection. Both doctors agreed to do so. Dr. Bruno performed mediastinal debridement and sternal rewiring, and Dr. Miller prescribed certain antibiotics. In the course of his antibiotic treatment, Patient experienced vertigo and loss of equilibrium.

{2} Plaintiffs subsequently formed the belief that Patient's health complications were caused by Dr. Miller's failure to adequately monitor the administration of the antibiotic therapy, so they filed suit. In their complaint, Plaintiffs asserted claims of medical negligence, battery, negligent infliction of emotional distress, and loss of consortium. Plaintiffs claimed they were entitled to damages because Defendants knew or should have known that the antibiotics prescribed by Dr. Miller can cause bilateral weakness in the inner ear labyrinthine systems, which results in vertigo and loss of equilibrium, and yet they allowed Patient to take the antibiotics until he sustained severe and permanent damage.

{3} Defendants responded to Plaintiffs' complaint by filing motions to dismiss for lack of personal jurisdiction. In their motions, Defendants claimed the trial court lacked the authority to assert personal jurisdiction over them because (1) they did not transact business in New Mexico, (2) they did not commit a tort in New Mexico, and (3) they lack minimum contacts with New Mexico such that due process considerations would be offended if the trial court were to assert personal jurisdiction over them. The trial court accepted Defendants' arguments and dismissed Plaintiffs' complaint without prejudice. Plaintiffs now appeal.

{4} For the reasons stated more fully below, we agree with the trial court that it lacked personal jurisdiction over El Paso Southwestern Cardiovascular Associates, P.A., Dr. Eisenberg, Dr. Bruno, Dr. Miller, and Dr. Kidd (Non-Hospital Defendants). Plaintiffs did not claim at the trial court level that Non-Hospital Defendants transacted business in New Mexico, so we limit our discussion to whether the trial court could assert jurisdiction over these defendants under the "commission of a tortious act" prong of our analysis. Upon doing so, we conclude that even if Non-Hospital Defendants committed a tort in New Mexico, the trial court still lacked the authority to assert personal jurisdiction over them because they lack minimum contacts with New Mexico and therefore did not commit a tortious act under our long-arm statute. However, we disagree with the trial court that it lacked personal jurisdiction over Hospital because Plaintiffs' causes of action lie within the wake of Hospital's intentional, purposeful, and persistent transaction of business in New Mexico. We therefore affirm in part and reverse in part.

**BACKGROUND**

{5} Plaintiffs reside in Las Cruces, New Mexico. In November 1995, they traveled to El Paso, Texas, so that Patient could under-

go heart bypass surgery at Hospital. Patient decided to have the surgery performed at Hospital after reading its business advertisements in the local telephone directory, viewing its commercials on television, and hearing it recommended to him by some of his fellow employees who apparently had received medical care there in the past. Dr. Eisenberg performed the surgery at Hospital. After recuperating at Hospital for a few days, Patient was discharged. Plaintiffs returned to Las Cruces, where Patient was scheduled to complete his rehabilitation at home with the assistance of his wife and Mountain Shadows Home Health Care Services (Home Care).

{6} Approximately one month after returning to his home in Las Cruces, Patient complained of chest pain. He returned to El Paso in order to be examined by Dr. Eisenberg. Dr. Eisenberg performed the examination in his office at El Paso Southwestern Cardiovascular Associates, P.A., which is the same professional association that employs Dr. Bruno and Dr. Kidd. The following day, Dr. Eisenberg admitted Patient for hospitalization at Hospital. Patient's surgical wound had become infected, and the purpose of hospitalizing him was to treat his infection.

{7} Dr. Eisenberg asked Dr. Bruno and Dr. Miller to help him treat Patient's staph infection. Both doctors agreed to do so. Dr. Bruno performed mediastinal debridement and sternal rewiring, while Dr. Miller prescribed certain antibiotics to treat the infection. Dr. Miller's antibiotic prescription was utilized for the remainder of Patient's three-week stay at Hospital. Hospital's nurses monitored and administered to Patient throughout his stay at Hospital during this three-week period.

{8} At discharge, Hospital's staff arranged for home health care for Patient so that he could complete his antibiotic therapy in Las Cruces. Hospital and Dr. Miller contacted Home Care, informing it to carry out the orders of Patient's treating physicians, one of whom was Dr. Miller, who ordered the continuation of antibiotic therapy. Pursuant to these orders, Patient received antibiotic therapy at his home in Las Cruces.

{9} Approximately two weeks into his therapy at home, Patient informed Dr. Bruno that he was experiencing vertigo and loss of equilibrium. Dr. Bruno immediately ordered Home Care to discontinue the therapy upon hearing Patient's complaints. Plaintiffs subsequently formed the belief that Patient's vertigo and loss of equilibrium had been caused by Dr. Miller's failure to terminate treatment with the antibiotics, which have a known detrimental effect on the hearing organs (ototoxic effect) when used for too long of a duration, before Patient suffered severe and permanent damage to his inner ears. Plaintiffs filed a medical malpractice lawsuit against Defendants in January 1998.

## STANDARD OF REVIEW

{10} The issue presented for our review is whether the trial court had the authority to assert personal jurisdiction over Defendants, none of whom reside in New Mexico. This is a question of law, which we review de novo. *See Campos Enters., Inc. v. Edwin K. Williams & Co.*, 1998–NMCA–131, ¶ 5, 125 N.M. 691, 964 P.2d 855. If, as here, a district court bases its ruling upon the parties' pleadings and affidavits, the applicable standard of review largely mirrors the standard that governs appeals from the award or denial of summary judgment. *See Harrell v. Hayes*, 1998–NMCA–122, ¶ 11, 125 N.M. 814, 965 P.2d 933. In this respect, both a district court and this appellate court must construe the pleadings and affidavits in the light most favorable to the complainant. *See Doe v. Roman Catholic Diocese of Boise, Inc.*, 1996–NMCA–057, 121 N.M. 738, 742, 918 P.2d 17, 21. The complainant need only make a prima facie showing that personal jurisdiction exists when a district court does not hold an evidentiary hearing. *See Tercero v. Roman Catholic Diocese of Norwich, Conn.*, 1999–NMCA–052, ¶ 12, 127 N.M. 294, 980 P.2d 77, *cert. granted*, 127 N.M. 391, 981 P.2d 1209 (1999).

## DISCUSSION

{11} Plaintiffs failed to serve process upon Defendants within the territorial limits of New Mexico. Nevertheless, they contend that the trial court had the authority to assert personal jurisdiction over the non-

resident Defendants. In order for this contention to hold true, the conduct Plaintiffs complain of must meet a three-part test: (1) Defendants must have done at least one of the acts enumerated in our long-arm statute, (2) Plaintiffs' causes of action must have arisen from the act or acts, and (3) Defendants must have had minimum contacts with New Mexico sufficient to satisfy constitutional due process. *See Visarraga v. Gates Rubber Co.*, 104 N.M. 143, 146, 717 P.2d 596, 599 (Ct.App. 1986).

### A. *Long–Arm Statute and Causes of Action*

{12} Plaintiffs claim Defendants' conduct satisfies the requirements of our long-arm statute. *See* NMSA 1978, § 38–1–16 (1971). Section 38–1–16(A) provides that any party, whether or not a resident of New Mexico, who does one or more of our long-arm statute's enumerated acts submits to the jurisdiction of the courts of this State so long as the complainant's cause of action arises from:

> (1) the transaction of any business within this state;
> (2) the operation of a motor vehicle upon the highways of this state;
> (3) the commission of a tortious act within this state;
> (4) the contracting to insure any person, property or risk located within this state at the time of contracting; [or]
> (5) with respect to actions for divorce, separate maintenance or annulment, . . . if one party to the marital relationship continues to reside in the state.

Section 38–1–16(A). The parties agree that based on the facts presented in this case, we need only consider whether Defendants' conduct falls within subsections (1) and (3) of our long-arm statute.

### 1. *Business*

{13} Plaintiffs claim Defendants transacted business in New Mexico. The determination of whether a party has transacted business within the meaning of our State's long-arm statute must be made on a case-by-case basis. *See Telephonic, Inc. v. Rosenblum*, 88 N.M. 532, 534, 543 P.2d 825, 827 (1975) (stating that the resolution of this issue is to "be determined by the facts in

each case"). It appears from the record that Plaintiffs raised this claim only as to Hospital at the trial court level. We restrict our analysis accordingly. *See Beneficial Fin. Co. v. Alarcon*, 112 N.M. 420, 424, 816 P.2d 489, 493 (1991) (ruling that matters not properly before the trial court cannot be considered for the first time on appeal).

{14} Plaintiffs contend that Hospital transacted business in New Mexico because it placed advertisements in several New Mexico telephone directories, produced television commercials that could be and were viewed by New Mexico customers, and previously performed health care services for other New Mexico customers. In support of their contention, Plaintiffs provided the trial court with copies of Hospital's written ads, which appeared in the white and yellow pages of the Roswell, Alamogordo, Silver City, and Las Cruces telephone directories for the years 1994 to 1997. Plaintiffs also produced Patient's affidavit in which he stated that he was aware of and had seen Hospital's commercial advertisements on his television. In his affidavit, Patient averred that he decided to have the surgery performed at Hospital based on its general solicitations, as well as on the recommendation from some of his fellow employees who apparently had received medical care at Hospital in the past.

{15} We agree with Plaintiffs that the evidence they produced at the trial court level supports their contention that Hospital intentionally initiated commercial activities in New Mexico for the purpose of realizing pecuniary gain. *See Kathrein v. Parkview Meadows, Inc.*, 102 N.M. 75, 76, 691 P.2d 462, 463 (1984) (finding that defendant's advertisements in yellow pages, coupled with a letter to the plaintiff, constituted the transaction of business); *Frazer v. McGowan*, 198 Conn. 243, 502 A.2d 905, 909–10 (1986) (ruling that Connecticut had jurisdiction over nonresident hospital that placed ads in yellow pages of Connecticut telephone directories). This determination is further compelled by the fact that Patient was not the first New Mexico resident to receive medical care at Hospital on account of its commercial activities within this State. *See Roberts v. Piper*

*Aircraft Corp.,* 100 N.M. 363, 367–68, 670 P.2d 974, 978–79 (Ct.App.1983) (ruling that nonresident defendant who solicited business by advertising in a trade journal that is circulated in New Mexico and who previously had performed work for other New Mexico residents availed itself of the privilege of conducting business in New Mexico); *Moore v. Graves,* 99 N.M. 129, 132–33, 654 P.2d 582, 585–86 (Ct.App.1982) (same).

■ {16} Plaintiffs also contend that their causes of action arise from Hospital's transaction of business in New Mexico. This contention is based on Plaintiffs' allegation that, but for Hospital's solicitations, Patient would not have sought treatment at Hospital nor would he have endured certain health complications arising from Dr. Miller's prescription and Defendants' negligent failure to monitor the administration of potentially ototoxic antibiotics. Again, we agree with Plaintiffs. *See Kathrein,* 102 N.M. at 77, 691 P.2d at 464 (finding that complainant would not have visited her husband at out-of-state alcohol treatment center, where she allegedly suffered emotional and psychological damages, if not for nonresident defendant's efforts to encourage her to make that visit); *Winward v. Holly Creek Mills, Inc.,* 83 N.M. 469, 472, 493 P.2d 954, 957 (1972) (ruling that a cause of action arises out of a defendant's transaction of business for purposes of our long-arm statute when the cause of action lies "within the wake of defendant's commercial activity").

### 2. Tort

{17} Plaintiffs contend that Defendants committed a tortious act in New Mexico. This contention is based on Plaintiffs' theory that, although Defendants' negligent conduct may have occurred in Texas, a tort is not complete until there is injury. *See Peralta v. Martinez,* 90 N.M. 391, 393, 564 P.2d 194, 196 (Ct.App.1977). Plaintiffs assert that Patient did not sustain a cognizable injury until he began to experience vertigo and loss of equilibrium. Inasmuch as Patient experienced these health problems in New Mexico, and not in Texas, Plaintiffs assert that the allegedly tortious act occurred in New Mexico. *See Roberts,* 100 N.M. at 366, 670 P.2d at 977 (ruling that when negligent acts occur outside New Mexico which cause injury within New Mexico, a "tortious act" has been committed within this State); *Beh v. Ostergard,* 657 F.Supp. 173, 175–76 (D.N.M.1987) (ruling that a "tortious act" occurred in New Mexico when complainant allegedly developed certain health complications in New Mexico from the negligent implantation of an intrauterine contraceptive device in California, because a tort is not complete until a complainant endures a cognizable injury).

{18} Defendants argue that we should reject Plaintiffs' continuing tort theory because it is "based largely on the outdated 'place of wrong' choice of law rule." We decline the opportunity to address Defendants' contention because our Supreme Court continues to endorse the place-of-the-wrong rule. *See Torres v. State,* 119 N.M. 609, 613, 894 P.2d 386, 390 (1995) (applying place-of-the-wrong rule); *State v. Wilson,* 116 N.M. 793, 796, 867 P.2d 1175, 1178 (1994) (ruling that this Court is bound by direct Supreme Court precedent).

{19} Defendants also argue that they did not, either individually or collectively, commit a tortious act in the first place. For purposes of this discussion only, we reject Defendants' argument and assume without deciding that they committed a tort in New Mexico and that Plaintiffs' sustained damages therefrom. We do so for two reasons. First, as stated above, Plaintiffs' causes of action arise out of Hospital's intentional, purposeful, and persistent transaction of business in New Mexico. It is therefore unnecessary for us to consider whether Hospital's conduct satisfies another subsection of our long-arm statute. *See Visarraga,* 104 N.M. at 146, 717 P.2d at 599 (stating that in order to satisfy the requirements of our long-arm statute, a non-resident defendant need only complete one of the statute's enumerated acts that gives rise to the plaintiff's cause of action). Second, as stated below, we conclude that even if Non–Hospital Defendants committed a tortious act that caused Plaintiffs damages in New Mexico, the trial court would still lack the authority to assert jurisdiction over them because they lack minimum contacts with this State. *See Tarango*

*v. Pastrana,* 94 N.M. 727, 728, 616 P.2d 440, 441 (Ct.App.1980) (holding that even if the defendants committed a tort, the trial court still lacked personal jurisdiction over them because they lacked minimum contacts with New Mexico).

{20} The proper two-step analysis for determining issues of personal jurisdiction is set forth in *Aetna Casualty & Surety Co. v. Bendix Control Division,* 101 N.M. 235, 680 P.2d 616 (Ct.App.1984), wherein we stated:

> In reviewing challenges to jurisdiction under our state's long-arm statute, two levels of analysis are necessary. First, the court must determine whether plaintiff has alleged an event in New Mexico, *see* Section 38–1–16, so as to subject defendant to that statute. Secondly, if the threshold requirements have been met, the court must determine whether the exercise of personal jurisdiction over the defendant is consistent with the requirements of due process.

*Id.* at 240, 680 P.2d at 621 (citations omitted); *see Tarango,* 94 N.M. at 728, 616 P.2d at 441 (stating that the question of personal jurisdiction over non-resident defendants involves more than the technical "'transaction of any business'" or the technical "'commission of a tortious act'" within New Mexico). It is to the minimum contacts portion of that analysis that we now turn.

**B.** *Minimum Contacts*

{21} In order for a non-resident defendant to be subjected to the personal jurisdiction of an out-of-state court, he must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citations omitted); *accord Telephonic, Inc.,* 88 N.M. at 534, 543 P.2d at 827. "A central factor in determining whether these 'minimum contacts' were established is the degree to which defendant purposefully initiated its activity within the State." *Customwood Mfg., Inc. v. Downey Constr. Co.,* 102 N.M. 56, 57, 691 P.2d 57, 58 (1984). "[I]t is essential in each case that there be some act by

which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *accord Tercero,* 1999–NMCA–052, ¶ 18, 127 N.M. 294, 980 P.2d 77.

{22} For the reasons stated above, we believe that Hospital established certain minimum contacts with this State by intentionally, purposefully, and persistently soliciting the business of New Mexico customers. It placed advertisements in several New Mexico telephone directories, produced television commercials that could be and were viewed by potential customers in New Mexico, and previously performed health care services for other New Mexico customers. Hospital's advertisements support the conclusion that it intentionally initiated commercial activities in New Mexico for the purpose of realizing pecuniary gain. *See Hanson,* 357 U.S. at 253, 78 S.Ct. 1228; *Tercero,* 1999–NMCA–052, ¶ 16, 127 N.M. 294, 980 P.2d 77.

{23} We believe, however, that Non–Hospital Defendants lack minimum contacts with New Mexico because they did not purposefully initiate any activities in this State. This is true even though technically they may have committed a tortious act in New Mexico. *See Tarango,* 94 N.M. at 728, 616 P.2d at 441 (holding that even if the defendants committed a tort in New Mexico, the trial court still lacked personal jurisdiction over them because they lacked minimum contacts with this State).

{24} In *Valley Wide Health Servs., Inc. v. Graham,* 106 N.M. 71, 72–73, 738 P.2d 1316, 1317–18 (1987), the New Mexico Supreme Court addressed the issue of whether a Colorado physician had subjected himself to the jurisdiction of our state courts by giving a New Mexico patient allegedly negligent medical advice in a telephone call. Answering in the negative, our Supreme Court stated that prior to the physician's telephone call, a doctor-patient relationship had already been established in Colorado. *See id.* at 73, 738 P.2d at 1318. The Supreme Court determined that the physician had not purposely initiated activity in this State, but instead had simply

responded to his patient's call for help as the patient's treating physician. *See id.* at 72–73, 738 P.2d at 1317–18. It was mere happenstance that the patient lived in New Mexico.

{25} In our view, the case at bar falls under the rubric set forth in *Valley Wide Health Services, Inc.*. Although *Valley Wide Health Services, Inc.* involved a phone call and this case involved discharge instructions including the continuation of the antibiotic therapy that allegedly hurt Patient, the Supreme Court's underlying rationale in *Valley Wide Health Servs., Inc.* still holds true. It is determinative that other than Hospital, Defendants acted in New Mexico only after Patient had unilaterally initiated a doctor-patient relationship in Texas. This type of action does not constitute purposeful action. As one court so aptly put it:

> The case at bar does not involve a product which was deliberately or foreseeably shipped into the forum state's markets. It focuses on a service, not performed in the forum state but in a foreign state, rendered after the plaintiff voluntarily traveled to the foreign state so that he could benefit from that service which was available there only.
>
> When one seeks out services which are personal in nature, such as those rendered by attorneys, physicians, dentists, hospitals or accountants, and travels to the locality where he knows the services will actually be rendered, he must realize that the services are not directed to impact on any particular place, but are directed to the needy person himself. While it is true that the nature of such services is that if they are negligently done, their consequences will thereafter be felt wherever the client or patient may go, it would be fundamentally unfair to permit a suit in whatever distant jurisdiction the patient may carry the consequences of his treatment, or the client the consequences of the advice received.
>
> Unlike a case involving voluntary interstate or international economic activity, which is directed at the forum state's markets, the residence of a recipient of personal services rendered elsewhere is irrelevant and totally incidental to the benefits provided by the defendant at his own location. It is clear that when a client or a patient travels to receive professional services without having been solicited (which is prohibited by most professional codes of ethics), then the client, who originally traveled to seek services apparently not available at home, ought to expect that he will have to travel again if he thereafter complains that the services sought by him in the foreign jurisdiction were therein rendered improperly.
>
> Any other rule would seem to be not only fundamentally unfair, but would inflict upon the professions the obligation of traveling to defend suits brought in foreign jurisdictions, sometimes very distant jurisdictions, there brought solely because the patient or client upon his return to his own home decided to sue at home for services sought by himself abroad.

*Gelineau v. New York Univ. Hosp.*, 375 F.Supp. 661, 667 (D.N.J.1974) (citation and footnote omitted); *Tarango*, 94 N.M. at 729–30, 616 P.2d at 442–43 (quoting the same passage from *Gelineau* ).

{26} We acknowledge Plaintiffs' argument that their case differs from *Gelineau* and *Tarango* in that they allege a continuing tort, whereas the other cited cases involve a discrete set of services that could be said to have been rendered strictly outside the patient's home state. This point notwithstanding, we fail to see why the case at bar falls outside the purview of *Valley Wide Health Services, Inc.*. When a person unilaterally seeks specialty care, which Patient no doubt did by traveling to Texas to undergo heart bypass surgery and then again to receive treatment for his staph infection, follow-up care, including medical prescriptions, are almost sure to follow. This type of follow-up care, without any evidence that the non-resident physician reached into the forum state in order to attract the patient's business, simply does not constitute the purposeful availment that is both contemplated in and required by our due process analysis. Nor are we impressed by Patient's conclusory affidavit that all doctors "provided medical services to me ... at Mountain Shadows." The 600–page record in this case is replete with case notes, discharge summaries, and specific information, and all it shows is the

transfer of follow-up care, including prescriptions, to New Mexico. *See Rivera v. Trujillo,* 1999–NMCA–129, ¶ 8, 128 N.M. 106, 990 P.2d 219.

{27} The citizens of New Mexico would be ill-served if we were to establish a rule that effectively compelled non-resident specialist physicians to prescribe only so much medicine as would get patients home. *See Prince v. Urban,* 49 Cal.App.4th 1056, 57 Cal.Rptr.2d 181, 186 (1996). We instead choose to reiterate the longstanding rule that a non-resident defendant will not be subjected to the jurisdiction of the courts of this State unless his or her activities are properly characterized as purposeful availment, rather than incidental. *See Valley Wide Health Servs., Inc.,* 106 N.M. at 72–73, 738 P.2d at 1317–18.

## CONCLUSION

{28} For the reasons stated, we affirm in part and reverse in part and remand with instructions to the trial court to reinstate Plaintiffs' complaint against Hospital only.

{29} **IT IS SO ORDERED.**

APODACA and BUSTAMANTE, JJ., concur.