This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38031**

**HENRY JUARDO MARTINEZ,**

Plaintiff-Appellant,

v.

**JOHN C. YE and LAW OFFICES OF JOHN C. YE, A Professional Law Corporation,**

Defendants-Appellees,

and

**WILL FERGUSON & ASSOCIATES, P.C.,**

Defendants.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Denise Barela Shepherd, District Judge**

Barber & Borg, LLC
Nathan S. Anderson
Albuquerque, NM

for Appellant

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Edward Ricco
Charles J. Vigil
Albuquerque, NM

for Appellees

### MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** This case arises from legal malpractice claims brought by Henry Juardo Martinez (Martinez) against Will Ferguson and Associates, P.C. (Ferguson defendants)[1], a New Mexico law firm, and John C. Ye and the Law Offices of John C. Ye (Ye defendants), a California law firm. Martinez appeals the district court's dismissal of the Ye defendants for lack of personal jurisdiction.

**{2}** We are asked to decide whether a nonresident law firm and lawyer must answer to legal malpractice claims in New Mexico arising from their representation in our courts of a nonresident in personal injury litigation vis-á-vis local counsel. Because we conclude that the Ye defendants had sufficient contacts with New Mexico to allow the district court to exercise personal jurisdiction consistent with due process, we reverse.

**BACKGROUND**

**{3}** Martinez was injured in a commercial motor vehicle accident on Interstate 40 in Bernalillo County, New Mexico in February 2012. At the time of the accident, Martinez was riding as a passenger in a commercial motor vehicle owned by Skyway, Inc. and driven by Marcos Rojas when it was hit by a commercial motor vehicle owned by Tiger Express, Inc. and driven by Lakhwinder Chatha. Immediately following the accident, Martinez returned to his home in California and retained the Ye defendants to provide legal services in connection with the accident.

**{4}** We cannot glean from the record before us what action the Ye defendants took to pursue Martinez's possible legal claims, even as others involved in the accident were already litigating in the United States District Court for the District of New Mexico. Faced with a looming statute of limitations on Martinez's claims, the Ye defendants emailed the Ferguson defendants in December 2014 to inquire whether their firm would be interested in "tak[ing] over [Martinez's] case with a 50-50 split in attorney fees." The Ferguson defendants agreed and memorialized the terms of the association agreement between the two firms as follows:

> As between us, I have agreed that we will undertake full responsibility for the case going forward in terms of filing and pursuing litigation. You have identified the parties and damages, the appropriate jurisdiction, and the involved insurance carriers, which we agree entitles your firm to a minimum of one-[sic]third (1/3) of any fee received. We have requested, and you have agreed to provide, your assistance in acting as the client interface, and marshalling special damage information from the area where the client resides. We have agreed that this effort, up to trial, would constitute a 50/50 division of effort. If the case proceeds into actual trial, this office would receive two-thirds (2/3) of any fee obtained thereafter.

---

1We note that the Ferguson defendants are not a party to this appeal, but are included in this opinion to the extent they relate to the actions of the Ye defendants.

**{5}** Martinez then signed a representation agreement with both the Ye and Ferguson firms to jointly represent him "as legal counsel for all claims arising in connection with injuries and damages received" from the accident.

**{6}** With the joint representation agreement in place, the two law firms worked "hand in hand" on Martinez's case. While the Ferguson defendants intervened in the federal court litigation on Martinez's behalf, the Ye defendants hired a life care planner and prepared their client in California for a deposition in New Mexico. The Ferguson and Ye defendants communicated frequently with one another regarding Martinez's case.

**{7}** The Ye defendants are not licensed to practice law in New Mexico, nor did they appear as counsel of record in the federal court litigation. Notwithstanding this fact, the Ye defendants were in contact with the Ferguson defendants during a mediation conference at which Martinez was offered $450,000 to settle his claims against Tiger Express, Inc. and Chatha. The Ye defendants objected to the proposed settlement offer.

**{8}** Following the failed mediation conference, the Ferguson defendants believed that the Ye defendants may have committed legal malpractice in Martinez's case prior to, and during, its joint representation of their client. The Ferguson defendants moved to withdraw as counsel in the federal court litigation, but Martinez accepted a settlement before a ruling on the Ferguson defendants' motion to withdraw was entered.

**{9}** Subsequently, Martinez sued both the Ye and Ferguson defendants in the Second Judicial District Court in New Mexico. Martinez alleged that "[a] reasonable investigation into [the accident] would have disclosed that the crash was caused in large part by the negligence of [both Skyway, Inc. and Rojas], for which Skyway, Inc. and its insurer were liable under New Mexico law." According to Martinez, he was never informed by either law firm that he had potential personal injury claims against Skyway, Inc. and Rojas—claims which he says could have led to a significantly higher monetary recovery.

**{10}** The Ye defendants moved to dismiss Martinez's complaint for lack of personal jurisdiction. In support of its argument, the Ye defendants attached an affidavit to its motion to dismiss detailing their lack of contacts to New Mexico, including that the Ye defendants (1) had never traveled to New Mexico in its representation of Martinez or otherwise; (2) were not licensed to practice law in New Mexico, nor ever admitted to practice pro hac vice; (3) did not advertise its legal services in New Mexico; and (4) had never filed any documents in the New Mexico courts.

**{11}** The district court heard oral argument from the parties on whether jurisdiction could be exercised over the Ye defendants before ruling that they lacked the requisite minimum contacts to New Mexico such that the exercise of jurisdiction would be unconstitutional. The district court did, however, grant Martinez leave to amend his complaint. Martinez then filed an amended complaint which included a theory of agency between the two law firms. The Ye defendants again moved to dismiss for lack of jurisdiction.

**{12}** Finding that Martinez had not made a prima facie showing that jurisdiction over the Ye defendants was proper under his theory of agency, the district court granted the Ye defendants' motion to dismiss. This appeal followed.

## DISCUSSION

**{13}** Martinez contends on appeal that the district court erred when it concluded that the Ye defendants did not have sufficient minimum contacts with New Mexico such that personal jurisdiction would be appropriate. "We review [the district court's] conclusion de novo." *Gallegos v. Frezza*, 2015-NMCA-101, ¶ 8, 357 P.3d 408.

**{14}** "Where, as here, the district court bases its ruling on the parties' pleadings, attachments, and non-evidentiary hearings, we apply a standard of review mirroring that of our standard governing appeals from summary judgment. We construe the pleadings and affidavits in the light most favorable to the complainant, and the complainant need only make a prima facie showing that personal jurisdiction exists." *Sproul v. Rob & Charlies, Inc.*, 2013-NMCA-072, ¶ 6, 304 P.3d 18 (internal quotation marks and citation omitted); *see also Campos v. Enters., Inc. v. Edwin K. Williams & Co.*, 1998-NMCA-131, ¶ 6, 125 N.M. 691, 964 P.2d 855 (explaining that when no evidentiary hearing is held, "the burden on a plaintiff is somewhat lessened in that the trial court will consider the affidavits in the light most favorable to the plaintiff" (internal quotation marks and citation omitted)). Accordingly, dismissal is proper only if the specific facts that Martinez alleges collectively fail to state a prima facie case for jurisdiction over the Ye defendants.

**{15}** "Utilizing New Mexico's long-arm statute, our courts may exercise personal jurisdiction over non[]residents." *Tercero v. Roman Catholic Diocese of Norwich, Conn.*, 2002-NMSC-018, ¶ 6, 132 N.M. 312, 48 P.3d 50 (citing NMSA 1978, Section 38-1-16(A) (1971). "Although our long-arm statute enumerates acts that may subject non[]resident defendants to personal jurisdiction in New Mexico, the necessity of a technical determination of whether a defendant committed such an act has been removed." *Zavala v. El Paso Cnty. Hosp. Dist.*, 2007-NMCA-149, ¶ 10, 143 N.M. 36, 172 P.3d 173. Rather, "because we have construed the state long-arm statute as being coextensive with the requirements of due process, our analysis collapses into a single search for the outer limits of what due process permits." *Sproul*, 2013-NMCA-072, ¶ 8 (alteration, internal quotation marks, and citation omitted).

**{16}** At its core, due process "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudezewicz*, 471 U.S. 462, 471-72 (1985) (internal quotation marks and citation omitted). Due process is thus only satisfied "when a defendant has sufficient minimum contacts with the forum state so that the assertion of jurisdiction over the defendant will not violate traditional notions of fair play and substantial justice." *Sproul*, 2013-NMCA-072, ¶ 9 (internal quotation marks and citation omitted).

**{17}** "The minimum contacts required for the state to assert personal jurisdiction over a defendant depends on whether the jurisdiction asserted is general (all-purpose) or specific (case-linked)." *Gallegos*, 2015-NMCA-101, ¶ 6 (alteration, internal quotation marks, and citation omitted). General jurisdiction may be exercised when a nonresident defendant's affiliations with New Mexico "are so continuous and systematic as to render it essentially at home in the forum state." *Id.* (internal quotation marks and citation omitted). In contrast, "[s]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *M.R. v. SereniCare Funeral Home, L.L.C.*, 2013-NMCA-022, ¶ 10, 296 P.3d 492 (internal quotation marks and citation omitted). Because Martinez does not claim on appeal that the Ye defendants are subject to general personal jurisdiction, we focus our attention only on whether specific personal jurisdiction is warranted.

**{18}** Even if a defendant's contacts are not so continuous and systematic as to support the exercise of general jurisdiction, our courts may nevertheless exercise specific jurisdiction if the defendant "purposefully established contact with New Mexico, . . . [but] only if the cause of action arose out of the contacts with New Mexico." *Zavala*, 2007-NMCA-149, ¶ 12 (alteration, internal quotation marks, and citation omitted). "In other words, 'there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities [in New Mexico], thus invoking the benefits and protections of its laws.' " *Sproul*, 2013-NMCA-072, ¶ 16 (quoting *F.D.I.C. v. Hiatt*, 1994-NMSC-044, ¶ 8, 117 N.M. 461, 872 P.2d 879). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." *Hiatt*, 1994-NMSC-044, ¶ 8 (internal quotation marks and citation omitted).

**{19}** Martinez contends on appeal that New Mexico has specific jurisdiction over the Ye defendants because they "purposefully availed themselves to the jurisdiction of the court when they solicited the services of a New Mexico law firm by reaching into New Mexico and entering into a contract with [the Ferguson defendants]." Martinez points to the Ye defendants' active control over the New Mexico litigation, including settlement negotiations, by phone and email. Ultimately, Martinez argues, the Ye defendants caused him to lose "the opportunity to obtain a full recovery of his damages" as they "failed to identify and instruct its hired agents to pursue the necessary claims." We understand Martinez's claims to be that the Ye defendants had two possible points of contact with New Mexico sufficient to confer specific personal jurisdiction (1) the association agreement between the two law firms, and (2) the subsequent actions by the Ye defendants in the underlying federal court litigation—both of which the Ye defendants contest. We review each in turn, concluding that the Ye defendants' collective actions are sufficient to warrant the district court's exercise of personal jurisdiction.

## A. Association Agreement

**{20}** First, Martinez argues that the Ye defendants are subject to the jurisdiction of our courts because they purposefully availed itself of the privileges of this state. According

to the Ye defendants, neither the formation of the association agreement, nor the association agreement itself, are minimum contacts. We begin by looking at the events leading up to the formation of the association agreement.

**{21}** With a fast-approaching deadline to pursue Martinez's claims, the Ye defendants emailed the Ferguson defendants in an attempt to secure local co-counsel here in New Mexico as follows:

> We have a complex injury case against a trucking company. . . . Our client lives in California and there is another plaintiff involved which has already filed suit in [New Mexico]. The Defense has moved the case to [federal court]. We need to immediately file on behalf of our client which is why we are reaching out to your office to possibly take over the case with a 50-50 split in attorney fees.

The law firms subsequently entered into an association agreement that the Ferguson defendants drafted and signed in New Mexico and that the Ye defendants signed in California.

**{22}** In its dismissal order, the district court cited to *CABA Limited Liability Co. v. Mustang Software, Inc.*, 1999-NMCA-089, 127 N.M. 556, 984 P.2d 803, in support of its determination that the formation of the association agreement was insufficient to confer jurisdiction. In *CABA*, this Court reasoned that its conclusion that the nonresident defendant in that case did not have the requisite minimum contacts to support jurisdiction was justified because New Mexico case law "supports our holding that a nonresident does not engage in business in New Mexico *when it enters into* [*a*] *contract* with a New Mexico resident by mail, fax, and telephone without ever entering the state." *Id.* ¶ 16 (emphasis added).

**{23}** The district court's reliance on *CABA* is correct insofar as it supports the finding that the execution of the association agreement in and of itself did not constitute a contact with New Mexico. *See id.* However, the Ye defendants' contacts with New Mexico are significantly more extensive than the mere execution of the association agreement, and we do not agree with the district court's application of our precedent on personal service contracts in this instance.

**{24}** The district court here relied on *SereniCare* and *Robinson-Vargo v. Funyak*, 1997-NMCA-095, 123 N.M. 822, 945 P.2d 1040 to support its conclusion that the Ye defendants did not have sufficient minimum contacts with New Mexico. However, neither *SereniCare* nor *Robinson-Vargo* addressed jurisdiction over a nonresident defendant which directly contracted with a nonresident plaintiff to provide personal services, despite knowing that to do so would require the provision of services in New Mexico. We explain.

**{25}** In *SereniCare*, this Court held that a nonresident funeral home could not be sued in New Mexico for alleged wrongs associated with its preparation of a body for shipment

to New Mexico. *See* 2013-NMCA-022, ¶ 29. The ultimate determination that our courts could not exercise jurisdiction over the nonresident funeral home was supported by two conclusions. First, this Court rejected the notion that the funeral home's tortious rendition of its services was "portable" such that the "rendering of personal services . . . without evidence that the [nonresident] defendant reached into the forum state in order to attract the service recipient's business, simply [could] not constitute the purposeful availment that is . . . required by our due process analysis." *Id.* ¶ 18 (internal quotation marks and citation omitted). Second, because there was no evidence that the funeral home had solicited the business of the decedent's family, nor visited or advertised it services in New Mexico, the funeral home's only contact with New Mexico was "fortuitous and indirect." *Id.* ¶¶ 22-23. Instead, the nonresident funeral home's involvement stemmed from a contract it had entered into with a shipping company, which in turn had been contacted by the funeral home the decedent's family had elected to work with in New Mexico. *Id.* ¶¶ 2-3, 27.

**{26}**    Unlike the facts presented in *SereniCare*, we can hardly agree with the Ye defendants' characterization of their contacts with New Mexico as "largely fortuitous." While it may be true that the Ye defendants are not licensed to practice law in New Mexico, this consideration evidently did not sway the firm's decision to represent a client who—by virtue of the location of his accident—would need representation in the courts of New Mexico. This is in stark contrast to the nonresident funeral home in *SereniCare* which was ultimately two degrees removed from the decedent's family, the eventual recipient of its services. *See* 2013-NMCA-022, ¶ 27. We agree with Martinez that the Ye defendants certainly appreciated that acceptance of Martinez as a client would require them to provide legal services and direction in New Mexico.

**{27}**    In *Robinson-Vargo*, this Court addressed whether jurisdiction could be exercised over a nonresident law firm by virtue of its act of mailing and asserting an attorney's charging lien to a former client residing in New Mexico. *See* 1997-NMCA-095, ¶ 1. We held that the nonresident law firm's telephone calls and letters to the former client's attorney in New Mexico were not sufficient minimum contacts because the former client had reached out to the nonresident law firm and there was no evidence that the law firm maintained an office in New Mexico, nor solicited clients from New Mexico. *Id.* ¶¶ 16-17. We also noted that there was no showing that the nonresident law firm "engaged in business or entered into any contract with [the former client] or others within this state . . . such that he could have reasonably be said to have anticipated being haled into the courts of this state." *Id.* ¶ 17.

**{28}**    Like the nonresident law firm in *Robinson-Vargo*, the Ye defendants are not admitted to practice law in this state, nor did they file documents on behalf of Martinez in any New Mexico court. *See id.* ¶ 17. Unlike the nonresident law firm in *Robinson-Vargo*, not only did the Ye defendants contract with a New Mexico law firm, they continued to represent Martinez—as evidenced by the joint representation agreement— and to participate in the federal court litigation as co-counsel with the Ferguson defendants. *See id.* ¶ 17.

**{29}** In sum, *SereniCare* and *Robinson-Vargo* did not present factual scenarios that included a nonresident defendant, which (1) directly agreed to provide personal services to a client that it knew would need those personal services, at least in part, in New Mexico; and (2) contracted with a New Mexico business to further its provision of those personal services to its client. These cases are thus distinguishable from the facts at hand. This brings us to our review of the Ye defendants' continued involvement in Martinez's representation upon associating with the Ferguson defendants.

## B.     Joint Representation

**{30}** Second, Martinez contends that the Ye defendants "controlled litigation and settlement negotiations in [federal court] by phone and email." The Ye defendants counter that their communications with the Ferguson defendants "are far too tenuous a thread on which to support personal jurisdiction over [them]."

**{31}** "We have held that a business that 'intentionally initiated commercial activities in New Mexico for the purpose of realizing pecuniary gain' subjects itself to personal jurisdiction." *Sublett v. Wallin*, 2004-NMCA-089, ¶ 28, 136 N.M. 102, 94 P.3d 845 (quoting *Cronin v. Sierra Med. Ctr.*, 2000-NMCA-082, ¶ 22, 129 N.M. 521, 10 P.3d 845). Because a nonresident defendant's activities are those which provide a basis for personal jurisdiction, "our focus is on the defendant's activities . . . not the acts of other defendants or third parties." *Gallegos*, 2015-NMCA-101, ¶ 6 (internal quotation marks and citation omitted).

**{32}** The Ye defendants characterize the responsibilities assigned to each firm in the association agreement as "location-specific." As we understand it, the Ye defendants would prefer for us to focus solely on the actions to be taken by each law firm *after* the association agreement was signed. To do so would require us to ignore the contents of the association agreement which defined the scope of the Ferguson defendants' actions as co-counsel for Martinez in the federal court litigation. As the association agreement itself explains, however, the Ye defendants "identified the parties and damages, the appropriate jurisdiction, and the involved insurance carriers[.]" Although the Ye defendants performed these functions in California, they then chose to enter into an agreement with the Ferguson defendants for the purposes of jointly pursuing litigation on Martinez's behalf in New Mexico and splitting any attorney fees that they harvested from that litigation.

**{33}** Operating within this framework, the Ferguson defendants understood their role to be that of local co-counsel for the purpose of pursuing litigation against the parties previously identified by the Ye defendants—that is, against Tiger Express, Inc. and Chatha. As an attorney working for the Ferguson defendants explained in his deposition, the Ferguson defendants did not pursue any claims against Skyway, Inc. or Rojas because that was "outside the scope of what [the Ferguson defendants were] asked to do." The Ferguson defendants believed that the Ye defendants and Martinez were the ultimate "decision makers" with respect to Martinez's personal injury lawsuit.

**{34}** The Ye defendants' activities during the course of the litigation in federal court provide a basis by which specific personal jurisdiction may be exercised. *See Sublett*, 2004-NMCA-089, ¶ 28 ("It is a defendant's activities which must provide the basis for personal jurisdiction, not the acts of other defendants or third parties." (alterations, internal quotation marks, and citation omitted)). Following execution of the association agreement, the two law firms agree that they worked "hand in hand" on Martinez's case and stayed in near "constant contact" with one another. The Ye defendants hired a life care planner for Martinez, and also prepared him for a deposition that took place in New Mexico as part of the federal court litigation. Echoing the terms of the association agreement, this division of responsibilities "constitute[d] a 50/50 division of effort" between the two firms.

**{35}** Although the Ye defendants are not licensed to practice in New Mexico, nor did they appear pro hac vice as counsel for Martinez in federal court in New Mexico, the Ye defendants remained in contact with the Ferguson defendants by telephone during a mediation conference in which they rejected a settlement offer made to Martinez by Tiger Express, Inc. and Chatha. The Ye defendants' significant influence over the litigation, including the firm's decision to reject a settlement offer, was consistent with the joint representation agreement between the two law firms and Martinez which provided that "[n]either [a]ttorneys nor [c]lient will settle or compromise this matter without the other's prior approval."

**{36}** The Ye defendants did not simply transfer Martinez's case to the Ferguson defendants. Rather, as the joint representation agreement makes clear, the Ye defendants (1) agreed that both they and the Ferguson defendants would serve as counsel for Martinez; and (2) intended to keep a share of any fees earned from the resolution of Martinez's case.

**{37}** A practical consequence of the Ye defendants' purposeful availment of the benefits and privileges of doing business in New Mexico while representing Martinez is that they may now be subject to the personal jurisdiction of our courts for legal malpractice claims arising from that representation. *See Kathrein v. Parkview Meadows, Inc.*, 1984-NMSC-117, ¶ 8, 102 N.M. 75, 691 P.2d 462 ("Given the level of defendant's activity within New Mexico, it seems fair to say that its conduct in this [s]tate was entirely voluntary, and that it reasonably could have contemplated being subject to New Mexico jurisdiction."). Because we conclude that the Ye defendants had sufficient minimum contacts with New Mexico, we now determine whether the exercise of personal jurisdiction would be reasonable in this instance.[2] *See Sproul*, 2013-NMCA-072, ¶ 9.

---

2Having determined that the Ye defendants had sufficient minimum contacts with New Mexico, we need not assess Martinez's legal theory of agency for two reasons. First, Martinez directs us to no legal authority to support this argument. *See Titus v. City of Albuquerque*, 2011-NMCA-038, ¶ 30, 149 N.M. 556, 252 P.3d 780 ("This Court has no duty to review an argument that is not adequately developed."). Second, addressing the agency theory would not impact our ultimate conclusion that the Ye defendants had sufficient minimum contacts with New Mexico—irrespective of any agency relationship that may have existed between the two law firms. *See Sheraden v. Black*, 1988-NMCA-016, ¶ 10, 107 N.M. 76, 752 P.2d

**C.    Due Process and Traditional Notions of Fair Play and Substantial Justice**

**{38}**    "The United States Supreme Court has held that even if a defendant has established sufficient minimum contacts with the forum state, the Due Process Clause forbids the assertion of personal jurisdiction over the defendant under circumstances that would offend traditional notions of fair play and substantial justice." *Id.* ¶ 35 (internal quotation marks and citation omitted). "This determination is made by balancing five factors: the burden on the defendant, New Mexico's interest, the plaintiff's interest, the interest in an efficient judicial system, and the interest in promoting public policy."[3] *Zavala*, 2007-NMCA-149, ¶ 12. Balancing these factors, we conclude that the exercise of jurisdiction is proper in this instance.

**{39}**    Martinez's interest in pursuing his legal malpractice claims against the Ye defendants in New Mexico, alongside those claims he makes against the Ferguson defendants, is easy to see: if the district court does not exercise jurisdiction over the Ye defendants, Martinez would have little choice but to file separate lawsuits against each law firm in different states. Not only would it be beneficial for Martinez to avoid maintaining two separate legal malpractice lawsuits in two states, judicial efficiency is also served by the consolidation of these claims into one lawsuit. *See id.* ¶ 33 ("It will therefore be most efficient if [the parties] are sued together in the same lawsuit.").

**{40}**    Martinez relatedly contends that it would not be burdensome for the Ye defendants to litigate legal malpractice claims in New Mexico because they already "took an active role in litigation" here in federal court. In response, the Ye defendants argue that the burden to defend against Martinez's legal malpractice claims in New Mexico is "apparent" as its "involvement in [Martinez's] personal injury litigation was limited to services performed in California."

**{41}**    We agree with Martinez that since the Ye defendants elected to accept a client whose claims would necessitate representation in New Mexico, and then proceeded to do just that, the burden on the Ye defendants to defend legal malpractice claims in New Mexico is minimal. In the absence of compelling arguments by the Ye defendants establishing the unconstitutionality of the assertion of jurisdiction by New Mexico, we are satisfied that the exercise of jurisdiction in this instance would be reasonable. *See Burger King*, 471 U.S. at 482 (describing the nonresident defendant's inability to "point[] to other factors that can be said persuasively to outweigh the considerations [already] discussed . . . and to establish the *unconstitutionality* of [the state's] assertion of jurisdiction").

**{42}**    While we recognize that Martinez is not a resident of this State, we agree with his contention that New Mexico has an interest in the adjudication of legal malpractice lawsuits brought against nonresident lawyers who are not admitted to practice law here

791 ("It is well settled in New Mexico that the function of a reviewing court on appeal is to correct erroneous results, not to correct errors that, even if corrected, would not change the result.").
3Notwithstanding Martinez's failure to address all of these factors in his brief in chief, we review each of the five factors given our de novo standard of review.

by virtue of bar admission nor by entry of appearance. We cannot, as a matter of public policy, permit nonresident lawyers to surreptitiously practice law in our courts and shed accountability for such representation by claiming lack of personal jurisdiction in those very same courts. To decide otherwise would incentivize nonresident lawyers to practice in New Mexico by associating with local counsel while escaping jurisdiction for any liability arising from such representation. Such an outcome would be untenable under these circumstances.

**{43}** To summarize, Martinez has carried his burden to make a prima facie showing that the Ye defendants had sufficient minimum contacts with New Mexico such that the requirements of due process are satisfied.

**CONCLUSION**

**{44}** For the foregoing reasons, we reverse and remand to the district court for further proceedings.

**{45} IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**SHAMMARA H. HENDERSON, Judge**